**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X

ROMA TORRE, KRISTEN SHAUGHNESSY,  :
JEANINE RAMIREZ, VIVIAN LEE and       :
AMANDA FARINACCI,                             :          No. 19-cv-05708 (JMF)
                                                               :
                              Plaintiffs,              :
                                                               :
              v.                                             :
                                                               :
CHARTER COMMUNICATIONS, INC. d/b/a  :
SPECTRUM,                                             :
                                                               :
                              Defendant.            :
-------------------------------------------------------------- X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AND STRIKE THE AMENDED COMPLAINT**


**WIGDOR LLP**

Douglas H. Wigdor
David E. Gottlieb
Julia L. Elmaleh-Sachs

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
jelmaleh-sachs@wigdorlaw.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

ALLEGATIONS OF THE COMPLAINT............................................................................1

ARGUMENT ...........................................................................................................................3

I.      Legal Standard on a Motion to Dismiss .................................................................3

II.     Charter Has Not Stated Which Claims It Seeks to Dismiss..................................3

III.    Charter Incorrectly Argues That It is Permitted to Discriminate Against Plaintiffs............4

        A.      Applicable Standards ...................................................................................4

                i.      Hostile Work Environment ..............................................................4

                ii.     Adverse Action .................................................................................5

                iii.    All Discrimination Claims Under City Law ...................................6

        B.      Roma Torre ...................................................................................................6

        C.      Kristen Shaughnessy....................................................................................10

        D.      Jeanine Ramirez............................................................................................12

        E.      Amanda Farinacci ........................................................................................13

IV.     Charter is not Permitted to Retaliate Against Plaintiffs......................................15

        A.      Applicable Standards ...................................................................................15

        B.      Roma Torre ...................................................................................................15

        C.      Kristen Shaughnessy....................................................................................17

        D.      Jeanine Ramirez............................................................................................19

        E.      Amanda Farinacci ........................................................................................20

        F.      Post-Lawsuit Retaliation is Actionable......................................................21

      G.     Charter's Argument Regarding Reputational Harm is Confounding ....................22

V.     Roma Torre Has Stated an Equal Pay Claim ....................................................................22

VI.    Charter's Motion To Strike Should Be Denied................................................................24

VII.   Plaintiffs Properly Amended the Complaint...................................................................25

CONCLUSION..........................................................................................................................26

# **TABLE OF AUTHORITIES**

## **Cases**

Anyachebelu v. Brooklyn Hospital Center,
   No. 16 Civ. 3159 (DLI)(VMS), 2017 WL 9511073 (E.D.N.Y. July 20, 2017)....................... 18

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)................................................................................................... 3

Boyer v. Syosset Cent. Sch. Dist.,
   No. 07 Civ. 3520 (JFB)(ETB), 2008 WL 1766603 (E.D.N.Y. Apr. 14, 2008) ........... 18, 19, 20

Burlington Northern and Santa Fe Ry. Co.,
   548 U.S. 53 (2006).................................................................................................. 5, 15

Culmone-Simeti v. New York City Dep't of Educ.,
   No. 17 Civ. 02313 (ER), 2019 WL 2409736 (S.D.N.Y. June 7, 2019) ...................... 9

Curcio v. Roosevelt Union Free Sch. Dist.,
   No. 10 Civ. 5612 (SJF)(AKT), 2012 WL 3646935 (E.D.N.Y. Aug. 22, 2012) ...................... 16

Davis v. City Univ. of N.Y.,
   No. 94 Civ. 7277 (SHS), 1996 WL 243256 (S.D.N.Y. May 9, 1996)...................................... 14

DiBrino v. Dept. of Veteran's Affairs,
   118 Fed. Appx. 533 (2d Cir. 2004)........................................................................... 8

Drew v. Plaza Construction Corp.,
   688 F. Supp. 2d 270 (S.D.N.Y. 2010)...................................................................... 10

Duplan v. City of New York,
   888 F.3d 612 (2d Cir. 2018)............................................................................. passim

EEOC v. Port Auth. of N.Y. & N.J.,
   768 F.3d 247 (2d Cir. 2014)...................................................................................... 23

Eng v. City of New York,
   715 Fed. Appx. 49 (2d Cir. 2017) ............................................................................ 24

Fairchild v. Quinnipiac University,
   16 F. Supp. 3d 89 (D. Conn. 2014) .......................................................................... 23

Fincher v. Depository Trust and Clearing Corp.,
   604 F.3d 712 (2d. Cir. 2010).................................................................................... 9

Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,
  *402 F.* Supp. 636 (S.D.N.Y. 1975) ................................................... 24, 25

Gaffney v. Dept. of Information Tech.,
  579 F. Supp. 2d 455 (S.D.N.Y. 2008) ................................................. 25

Galabya v. N.Y.C. Bd. Of Educ.,
  202 F.3d 636 (2d Cir. 2000) ............................................................. 5

Godino v. Premier Salons, Ltd.,
  140 A.D.3d 1118 (2d Dep't 2016) ..................................................... 10

Gorzynski v. JetBlue Airways Corp.,
  596 F.3d 93 (2d Cir. 2010) ............................................................... 18

Grant v. Bethlehem Steel Corp.,
  622 F.2d 43 (2d Cir. 1980) ............................................................... 19

Gregory v. Daly,
  243 F.3d 687 (2d Cir. 2001) ............................................................. 4

Guzman v. News Corp.,
  09 Civ. 09323 (LGS), 2013 WL 5807058 (S.D.N.Y. Oct. 28, 2013) ............... 18, 19

Harrison v. New York City Off-Track Betting Corp.,
  No. 99 Civ. 6075 (VM), 2001 WL 1154691 ........................................ 11, 14

Hous. Works, Inc. v. City of New York,
  72 F. Supp. 2d 402 (S.D.N.Y. 1999) ................................................. 17

Kairam v. W. Side GI, LLC,
  No. 18 Civ. 01005 (AT)(SDA), 2018 WL 6717280 (S.D.N.Y. Nov. 9, 2018) ......... 23, 24

Kassman et al. v. KPMG LLP,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) ................................................. 23

Leget v. Henderson,
  No. 99 Civ. 3636 (DLC), 2001 WL 43615 ............................................. 12

Lynch v. New York State Urban Dev. Corp.,
  No. 16 Civ. 5926 (ENV), 2018 WL 7918226 (E.D.N.Y. Aug. 10, 2018) ............... 5

Lynch v. Southampton Animal Shelter Found. Inc.,
  278 F.R.D. 55 (E.D.N.Y. 2011) ......................................................... 24

iv

MacAlister v. Millenium Hotels & Resorts,
   No. 17 Civ. 6189 (ER), 2019 WL 5886440(S.D.N.Y. Nov. 8, 2018) ........................ 6

Mihalik v. Credit Agridcole Cheuvreux Inc.,
   715 F.3d 102 (2d Cir. 2013)........................................................................... 6

Morales v. Long Island Railroad Co.,
   No. 09 Civ. 8714 (HB), 2010 WL 1948606 (S.D.N.Y. May 14, 2010)................. 7, 8

Oram v. SoulCycle LLC,
   979 F. Supp. 2d 498 (S.D.N.Y. 2013)............................................................ 25

Patane v. Clark,
   508 F.3d 106 (2d Cir. 2007).......................................................................... 4

Patterson v. Xerox Corp.,
   732 F. Supp. 2d 181 (W.D.N.Y. 2010) .......................................................... 21

Petrosino v. Bell Atl.,
   385 F.3d 210 (2d Cir. 2004).......................................................................... 9

Pothen v. Stony Brook University,
   211 F. Supp. 3d 486 (E.D.N.Y. 2016) .......................................................... 5, 7

Rivera v. Potter,
   No. 03 Civ. 1991 (LAP), 2005 WL 236490 (S.D.N.Y. Jan. 31, 2005)..................... 8

Robinson v. Goulet,
   525 Fed. Appx. 28 (2d Cir. 2013) ................................................................. 7

Rodriguez v. Coca Cola Refreshments USA, Inc.,
   No. 12 Civ. 234 (BMC), 2013 WL 5230037 (E.D.N.Y. Sept. 16, 2013) ............... 11

Roe v. City of N.Y.,
   151 F. Supp. 2d 495 (S.D.N.Y. 2001)............................................................ 24

Ruhling v. Tribune Co.,
   No. 04 Civ. 2430 (ARL), 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007)...................... 8

Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP,
   915 F. Supp. 2d 498 (S.D.N.Y. 2013)............................................................ 14

Sosa v. N.Y.C. of Dep't of Educ.,
   368 F. Supp. 3d 489 (E.D.N.Y. 2019) ........................................................... 5

Sotomayor v. City of New York,
 862 F. Supp. 2d 226 (E.D.N.Y. 212) ............................................... 6

Sprint v. Mendelsohn,
 552 U.S. 379 (2008) ......................................................................... 25

Swierkiewicz v. Sorema N.A.,
 534 U.S. 506 (2002) ......................................................................... 18

Tepperwien v. Entergy Nuclear Operations, Inc.,
 663 F.3d 556 (2d Cir. 2011) ............................................................ 15

Torres v. Pisano,
 116 F.3d 625 (2d Cir.1997) ............................................................... 4

Tournois v. Waterloo Premium Outlet/Simon Prop. Grp., Inc.,
 No. 12 Civ. 6501T, 2013 WL 3936465 (W.D.N.Y. July 30, 2013) ......................................... 21

Tulino v. City of New York,
 No. 15 Civ. 7106 (JMF), 2016 WL 2967847 (S.D.N.Y. May 19, 2016) .................................. 23

Ulrich v. Moody's Corp.,
 No. 13 Civ. 0008 (VSB)(MHD), 2014 WL 12776746 (S.D.N.Y. Mar. 31, 2014) ..................... 9

Vale v. Great Neck Water Pollution Control Dist.,
 80 F. Supp. 426 (E.D.N.Y. 2015) ...................................................... 5

Vega v. Hempstead Union Free Sch. Dist.,
 801 F.3d 72 (2d Cir. 2015) ........................................................ 12, 13

Winfield v. Citibank,
 No. 10 Civ. 7304 (JGK), 2012 WL 266887 (S.D.N.Y. January 30, 2012) ............................... 24

Wu v. Good Samaritan Hospital Med. Cntr.,
 No. 17 Civ. 4247 (SJF)(ARL), 2019 WL 2754865 (E.D.N.Y. July 2, 2019) .......................... 24

Yaohua Deng v. Compass Group USA, Inc.,
 No. 08 Civ. 2842 (SJF)(ETB), 2010 WL 11507549 (E.D.N.Y. Feb. 17, 2010) ...................... 11

## Statutes

Title VII of the Civil Rights Act of 1964, *42 U.S.C. §§ 2000e et seq.* ................................ 4, 5, 14

The Age Discrimination in Employment Act of 1967, *29 U.S.C. §§ 621 et seq.* ......................... 9

The Equal Pay Act, *29 U.S.C. § 201(d)(1) et. seq.* ................................................... 22

The New York City Human Rights Law, *N.Y.C. Admin. Code §§ 8-101 et seq.* ...................... 3, 6

The New York Equal Pay Law, *N.Y.L.L. §194 et seq.* ............................................ 22

The New York State Human Rights Law, *N.Y. Executive Law §§ 290 et seq* ............................ 4,5

The New York State Human Rights Law, *N.Y. Executive Law §§ 296(h) et seq* ........................ 4,5

## **<u>Rules</u>**

Fed. R. Civ. P. 8(a) ................................................................ 3, 18

Fed. R. Civ P. 12(f) ................................................................ 24

## PRELIMINARY STATEMENT

Charter's Communication Inc.'s ("Charter") partial[1] motion to dismiss is as inherently

offensive as it is legally flawed.  Charter argues that – even if proven true – it is not unlawful to

condition significant terms of employment on Plaintiffs' age and/or gender.  Charter argues that

it is nothing more than a "petty slight" that Plaintiffs – who collectively have more than 100

years of tenure at NY1 – have, *inter alia*, (i) had air-time slashed in favor of younger women and

men; (ii) been passed up for a mid-morning anchor position in favor of younger women and men;

(iii) had fill-in anchor opportunities taken away and given to younger "women and men; (iv) been

passed up for numerous other anchor opportunities created exclusively for younger women and

men; (v) been denied numerous promotional opportunities made available to younger women

and men; (vi) been demoted to entry-level positions far beneath their level of seniority; and (vii)

been belittled and retaliated against for raising complaints about this conduct.  In short, Plaintiffs

have seen their workplace completely deteriorate under Charter's leadership while younger

women and men thrive.  Without hyperbole, Charter asks the Court to find that it is *permitted* to

engage in this conduct, even if it is on the basis of age and/or gender.  Charter's arrogance in

asserting such an argument only further demonstrates that it is fully tone deaf to these issues.

## ALLEGATIONS OF THE COMPLAINT[2]

Plaintiffs Roma Torre (midweek anchor/theater reviewer), Kristen Shaughnessy

(weekend anchor/midweek reporter), Jeanine Ramirez (weekend anchor/midweek reporter),

Vivian Lee (weekend anchor/midweek reporter) and Amanda Farinacci (midweek reporter) are

award winning on-air journalists at NY1 over the age of 40.  Despite their talent, skill,

---

[1]     While Charter styles its motion as a "motion to dismiss" it is distinctly only a "partial motion to dismiss."  See Defs.' Br. at pp. 8, 10; see also infra at §II.

[2]     All references to the Amended Complaint are cited simply as "¶__."

experience and tenure, they have all been subject to systematic and methodical marginalization and a hostile work environment ("HWE") since Charter took over in 2016 – while younger women and men are treated with favoritism.  ¶¶ 24-28, 32, 46, 63, 79, 88, 97, 159.

The discriminatory conduct to which Plaintiffs have been subjected under Charter's watch has been constant and therefore near endless, but includes the following:

- Ms. Torre has been at NY1 for 27 years and had her on-air time abruptly slashed in favor of younger women and men, without even the courtesy of a discussion before the decision was made. ¶¶ 24, 32, 58, 112-115, 120-126, 262-263.

- Ms. Shaughnessy, Ms. Ramirez, Ms. Lee and Ms. Farinacci were not considered for a new mid-morning anchor role despite having by far the most experience, and those positions were given to younger women and men.  ¶¶ 25-28, 116, 119, 135, 169-180.

- Ms. Shaughnessy, Ms. Ramirez and Ms. Lee have had fill-in anchoring opportunities slashed or completely removed from their job responsibilities, and those duties have been given to younger women and men.  ¶¶ 127-138, 141, 143-157, 159, 169-172.

- Charter created new shows – such as *Around The Boroughs* ("*ATB*") and *Money On 1* – and those anchor opportunities were provided exclusively to younger women and men and no new opportunities were created for or provided to Plaintiffs.  ¶¶ 175-179.

- Plaintiffs have been denied promotional efforts and support, such as promotional videos which are provided to younger women and men.  ¶¶ 182-191, 394.

- Ms. Shaughnessy and Ms. Lee were demoted to General Assignment ("GA") – an entry-level role with no field or production support and minor assignments – while younger women and men handle advanced reporting.  ¶¶ 204-216, 306-307, 392-393.

- Ms. Torre has been paid substantially less than male comparators.  ¶¶ 256, 257, 261.

This conduct is particularly egregious in the context of TV news media, where journalists strive to maximize and increase visibility.  On-air exposure is "career currency" – more air-time translates to more prominence, status and value and can lead to additional internal and external opportunities, including greater compensation, acting roles, writing opportunities, hosting gigs and a host of other benefits.  Reduced exposure generates the opposite result – it calls into question the person's standing, ability and importance.  One's ability to get in front of the largest

possible TV audience is critical to one's brand and advancement – it is very much the ultimate hallmark of a TV anchor's success.  Charter has stripped these opportunities from Plaintiffs and handed them to younger women and men with far less experience and tenure.

Plaintiffs have all made numerous complaints of discrimination (infra at §§IV(B)-(E)). Charter failed to conduct any legitimate investigation, violated company policy in doing so and reprimanded and attacked them for coming forward.  In fact, much of the mistreatment described above occurred after they raised these complaints – clear acts of retaliation.  ¶¶ 348-396.

The unfortunate reality is that this conduct is emblematic of a well-known epidemic of discrimination in TV news where older women "age out" to pave the way to showcase younger women and men.  ¶¶ 2-4.  Apparently Charter believes this is all permissible.

## ARGUMENT

### I.  Legal Standard on a Motion to Dismiss

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable."  Id. at 678.

### II.  Charter Has Not Clearly Stated Which Claims It Seeks to Dismiss

While Charter does not seek to dismiss the Complaint in full, it has not clearly articulated which claims it actually seeks to dismiss.  First, it is unclear if Charter moves to dismiss Plaintiffs' New York City Human Rights Law ("NYCHRL") claims at all.  Charter mentions the NYCHRL in its "Applicable Legal Standard" section, but in its "Argument," Charter posits several times only that the pleading fails under the "[Age Discrimination in Employment Act

3

("ADEA")] ADEA, [Title VII of the Civil Rights Act of 1964 ("Title VII")] Title VII  and [New

York State Human Rights Law ("NYSHRL")] NYSHRL." (See e.g. Defs.' Br. at pp. 5, 12, 14).

Moreover, and significantly, Plaintiffs have all clearly stated a "HWE" claim.  See ¶¶

400, 406, 412, 418, 425, 431, 437, 444.  Under Title VII, ADEA and NYSHRL, a HWE claim

has different standards than an adverse action claim.  Charter's entire motion neither includes the

phrase "HWE" nor addresses the pleading standard for such claims.  Thus, it seems Charter does

not move to dismiss Plaintiffs' HWE claims – and has not articulated any argument to that end.

**III.**   **Charter Incorrectly Argues That It Is Permitted to Discriminate Against Plaintiffs**

    **A.**   **Applicable Standards**

        **i.**   **Hostile Work Environment**

Under Title VII and ADEA, a HWE plaintiff need only plead facts to support an

inference that "a reasonable employee would find the conditions of her employment were altered

for the worse."  Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).   The Second Circuit has

"repeatedly cautioned against setting the bar too high."  Id.  Ultimately, a plaintiff must establish

a "severe or pervasive" environment, which is generally a jury issue.  See e.g. Torres v. Pisano,

116 F.3d 625, 631 (2d Cir.1997) ("general allegations of constant abuse" created

a jury question as to severity and pervasiveness, "even in the absence of specific details about

each incident"); Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001) ("a simple declaration that

defendant's conduct violated the ultimate legal standard at issue (e.g., [] "severe or pervasive")

does not suffice.  But it is enough to assert facts from which, construing the complaint liberally

and in the plaintiff's favor, one could infer such a violation").

Under NYSHRL, the standard is different.  In 2019, NYSHRL was amended to create an

even more lenient standard: a plaintiff need only allege "inferior terms, conditions or privileges

of employment." See NYSHRL § 296(h).[3]  This law became effective on October 11, 2019.  As

Plaintiffs' discrimination claims are continuing to accrue, this new standard must apply.

### ii.   Adverse Action

In contrast, when alleging an adverse action, Title VII, ADEA and NYSHRL require an

employee to plead that she has "endure[d] a materially adverse change in the terms and

conditions of employment." Galabya v. N.Y.C. Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

A materially adverse act can be any "change in working conditions that is more disruptive than a

mere inconvenience or an alteration in job responsibilities." Vale v. Great Neck Water Pollution

Control Dist., 80 F. Supp. 426, 434 (E.D.N.Y. 2015); Pothen v. Stony Brook University, 211 F.

Supp. 3d 486 (E.D.N.Y. 2016) (non-exhaustive list includes "demotion, denial of promotion,

addition of responsibilities, involuntary transfers than involve objectively inferior working

conditions, denial of benefits, denial of requested employment accommodations, denial of

training that may lead to promotional opportunities and shift assignments that make a normal life

more difficult for the employee, among other things"); Sosa v. N.Y.C. of Dep't of Educ., 368 F.

Supp. 3d 489, 495 (E.D.N.Y. 2019) (adding "other indices [] unique to a particular situation").

The Second Circuit has recognized that "[t]he determination of what constitutes a

materially adverse action is to be fact-intensive and depends on the context." See Lynch v. New

York State Urban Dev. Corp., No. 16 Civ. 5926 (ENV), 2018 WL 7918226, at *8 (E.D.N.Y.

Aug. 10, 2018), adopted as modified, No. 16 Civ. 5926 (ENV), 2019 WL 4184121 (E.D.N.Y.

Sept. 4, 2019) (citing Burlington Northern and Santa Fe Ry. Co., 548 U.S. 53, 54 (2006).

---

[3]     Charter's counsel even posted announcements that this amendment "Lowered Burdens for Bringing Harassment Claims" and "Significantly Expands Workplace Anti-Discrimination Protections."  Yet, Defendant conveniently ignores this standard in its motion papers. Available at: https://www.proskauer.com/blog/new-york-state-set-to-further-expand-protections-against-workplace-harassment; https://www.proskauer.com/blog/new-york-state-significantly-expands-workplace-anti-discrimination-protections.

### iii.   All Discrimination Claims Under City Law

The standards for both types of claims are even more lenient under the NYCHRL.  For either claim, a plaintiff must only plead that she was treated "less well" for a discriminatory reason.  Mihalik v. Credit Agricole Cheuvreux Inc., 715 F.3d 102, 110 (2d Cir. 2013).  This law is "designed to ensure that discrimination plays *no* role in the workplace."  Sotomayor v. City of New York, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 212) aff'd 713 F.3d 163 (2d Cir. 2013).

### B.   Roma Torre

Ms. Torre has easily pleaded claims both for HWE and adverse action.  Ms. Torre has alleged that, due to her age and gender, she has, *inter alia*, (i) lost air-time in her primary show slot in favor of younger women and men (¶ 62); (ii) been relegated to an inferior studio relative to this favored group (¶ 196); (iii) been provided less production support relative to the favored group (¶ 218); (iv) not been provided coaching support while the favored group has (¶¶ 155, 157); (v) not been provided promotional videos while the favored group has (¶¶ 182-183); (vi) not been provided other promotional opportunities extended to the favored group (¶¶ 196-197); (vii) not been supplied with makeup services provided to the favored group (¶¶ 221-222); (viii) lost additional air-time after being completely removed from the *On Stage* program while the favored group receives additional opportunities (¶¶ 223, 227); (ix) been paid far less than male anchors (¶ 261); (x) been belittled and ridiculed when she has raised complaints of mistreatment (¶¶ 112, 122, 224, 226, 308-320); and (xii) Charter violated company policy in the manner in which it addressed her complaints (¶¶ 380-386).

Charter has not even argued that Ms. Torre failed to plead that this conduct is discriminatory.  Rather, Charter argues that *even if everything Ms. Torre alleged is true*, NY1 is somehow *permitted* to discriminate in this manner because the alleged conduct only amounts to

"petty slights" and "trivial harms."  Defs.' Br. at p. 6.  Charter advances this argument despite Ms. Torre's express allegations that through each individual act and collectively, the discrimination has undermined the career she worked so hard to build.  ¶¶ 62, 112, 182, 187, 197, 217, 220, 227, 380 (alleging that this conduct is "having a materially adverse impact on her career," "[her] career has started to unravel," it is "ruining [her] career, image and reputation.").

To be very clear, Ms. Torre has alleged – as have her co-Plaintiffs – that since Charter took over NY1, it has engaged in a systematic campaign to marginalize Plaintiffs' employment, relegating them to second-class employees relative to younger women and men.  ¶¶ 4, 37-45, 62, 76, 86, 96, 106-108, 113-114, 118-122, 125-126, 136, 175-180, 210, 215-216, 320-321.  This conduct has reached the core of their workplace as anchors and reporters.  Charter cannot credibly argue that a methodical and all-encompassing effort to diminish the terms and conditions of Ms. Torre's employment does not constitute an "adverse action."

Contrary to Charter's arguments, numerous cases support the proposition that far less severe treatment than that alleged by Ms. Torre is actionable.  See e.g. Robinson v. Goulet, 525 Fed. Appx. 28, 30-31 (2d Cir. 2013) (where plaintiff was "yelled and cursed at" and had her hours reduced, "it is plausible that [defendant's] alleged actions constituted a materially significant disadvantage with respect to the terms and conditions of [plaintiff's] employment); Morales v. Long Island Railroad Co., No. 09 Civ. 8714 (HB), 2010 WL 1948606 at * 3 (S.D.N.Y. May 14, 2010) (on allegations of a suspension noted in plaintiff's record but never served, excessive scrutiny and unspecified lost opportunities, "this Court cannot determine on a motion to dismiss that [plaintiff] did not experience a setback to his career."); Pothen v. Stony Brook University, 211 F. Supp. 3d 486, 494 (E.D.N.Y. 2016) (denying motion to dismiss, "bad reports and various altercations with supervisors could qualify as adverse employment actions").

Ms. Torre's allegations clearly describe a massive "setback" in her career at the very least, creating actionable conduct.  See Morales, 2010 WL 1948606 at *3.

Charter cites MacAlister v. Millenium Hotels & Resorts, No. 17 Civ. 6189 (ER), 2019 WL 5886440 (S.D.N.Y. Nov. 8, 2018), for the proposition that Ms. Torre being assigned a lower quality studio is not actionable conduct.  However, MacAlister only stated that a lesser office alone is not "materially adverse" unless it is "accompanied by material loss of tangible job benefits."  Id. at *5.  Here, Ms. Torre has alleged a plethora of material adverse acts (listed above) which accompanied her relegation to an inferior studio.  Moreover, a TV studio assignment is far different than a mere "office location" as a studio impacts Ms. Torre's entire work environment and presentation on TV.  Whereas an "office" is simply a location where an employee works, a studio with its varying technological capabilities and on-air appearance materially impacts every aspect of Ms. Torre's work and presentation to her audience.

Defendant's cited cases also do not stand for the proposition that cutting an anchor's air-time is not materially adverse – far from it.  See DiBrino v. Dept. of Veteran's Affairs, 118 Fed. Appx. 533, 535 (2d Cir. 2004) (only stating that a "*shift change without anything else* has been held insufficient" and even acknowledging that in certain circumstances a shift change alone will be sufficient") (emphasis added); Ruhling v. Tribune Co., No. 04 Civ. 2430 (ARL), 2007 WL 28283 at *10 (E.D.N.Y. Jan. 3, 2007) (newspaper editor's hours being changed insufficient by itself); Rivera v. Potter, No. 03 Civ. 1991 (LAP), 2005 WL 236490 at *6 (S.D.N.Y. Jan. 31, 2005) (fluctuation in postal service worker's hours insufficient).  Ms. Torre has not merely alleged a "shift change" – Ms. Torre is an on-air anchor and it is a completely false equivalency to compare Ms. Torre to either a newspaper editor or postal worker.  For an anchor, TV air-time in front of a viewing audience is a critical and material benefit.  See supra at pp. 2-3.

8

Charter is wrong that it cannot be liable for failing to properly respond to and investigate internal complaints. Charter's own cited cases reflect the Second Circuit's position that "[w]e do not mean to suggest that failure to investigate a complaint cannot ever be considered an adverse employment action." See Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712 (2d. Cir. 2010) (deciding the issue at summary judgment; citing cases where failure to investigate may be retaliatory). Ms. Torre has alleged not only that Charter failed to investigate her complaints, but that Charter belittled and reprimanded her, was condescending towards her in response to her complaints, and violated company policy with respect to the manner in which the complaint was handled. ¶¶ 308-320. In short, Ms. Torre has alleged that the entire manner in which Charter responded to and addressed her complaints constitutes further discrimination. Charter has not cited any case for the proposition that the way in which a company responds to a discrimination complaint cannot be used as evidence to establish discrimination.

Charter's remaining cited cases involve utterly minimal levels of conduct not remotely analogous to the wide-ranging, systematic discrimination alleged by Ms. Torre. See Culmone-Simeti v. New York City Dep't of Educ., No. 17 Civ. 02313 (ER), 2019 WL 2409736, at *5 (S.D.N.Y. June 7, 2019) (merely alleging that defendant "favored younger teachers by praising them often and dedicating extra time to them"); Ulrich v. Moody's Corp., No. 13 Civ. 0008 (VSB)(MHD), 2014 WL 12776746, at *15 (S.D.N.Y. Mar. 31, 2014) (higher level of scrutiny and failure to give praise or credit for work insufficiently materially adverse); Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004) (no failure to promote where plaintiff failed to apply for the specific management positions she knew were vacant in her department).

Finally, as stated above, Charter has not moved to dismiss Ms. Torre's HWE claims. Nonetheless, Ms. Torre has easily pleaded that her work conditions have been "altered for the

9

worse" or are "inferior" and that she has been treated "less well."  See e.g. Drew v. Plaza Construction Corp., 688 F. Supp. 2d 270 (S.D.N.Y. 2010) (complaint sustained based on allegations that others treated more favorably, defendant was "harsh and critical" towards plaintiff and made "unreasonable demands"); Godino v. Premier Salons, Ltd., 140 A.D.3d 1118, 119 (2d Dep't 2016) (sustaining complaint where allegations involved plaintiff-hair stylist's work station being moved to a less desirable location).

### C.     Kristen Shaughnessy

Ms. Shaughnessy has also properly pleaded HWE and adverse action claims; she has alleged that, due to her age and gender, she has been (i) passed up for a mid-morning anchor position in favor of younger women and men (¶¶ 135, 169-170); (ii) denied morning fill-in anchor opportunities previously available to her in favor of the preferred group (¶¶ 141, 305); (iii) passed up for additional anchor opportunities in favor of younger women and men, such as *ATB* and *Money On 1* (¶¶ 175-177, 180); (iv) not been provided promotional support/videos provided to this favored group (¶¶ 181-182, 189); (v) demoted into a GA reporter role usually assigned to entry-level reporters while the preferred roles are given to younger women and men (¶¶ 204, 206, 209-210); (vi) not provided with coaching provided to those in the favored group (¶¶ 155, 157); and (vii) Charter violated company policy in responding to her complaints (¶¶ 289, 298, 304-305).  Charter argues that this discrimination is permissible.

As with Ms. Torre, Ms. Shaughnessy has alleged that she is a victim of a coordinated effort to marginalize older women at the benefit of younger women and men, and that this conduct has taken numerous forms.  In all, Ms. Shaughnessy has lost visibility to the public, lost advancement opportunities and been demoted in her job responsibilities – while opportunities and promotions are in abundance for younger women and men.  For the same reasons as Ms.

Torre, Charter does not get a "free pass" to discriminate against Ms. Shaughnessy in this manner. This conduct certainly qualifies as materially adverse.  See supra at §III(B).

The fact that Ms. Shaughnessy has been denied anchoring opportunities – including on new shows such as *ATB* or *Money on 1*, and in midweek fill-in roles – has certainly contributed to this materially adverse act.  As stated, anchoring positions are unique and rare opportunities and are considered the pinnacle of the TV news hierarchy – people strive to reach these positions for their entire careers.  As such, Charter's cited cases on this point are entirely off the mark.  See Rodriguez v. Coca Cola Refreshments USA, Inc., No. 12 Civ. 234 (BMC), 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) (at summary judgment, plaintiff's subjective belief that he was given certain jobs he considered "less desirable" is not actionable, particularly given his testimony that white workers at times did the "worst jobs" and minorities at times did the "best jobs."); Harrison v. New York City Off-Track Betting Corp., No. 99 Civ. 6075 (VM), 2001 WL 1154691, at * 3 (S.D.N.Y. Sept. 28, 2001) (at summary judgment, though plaintiff claimed he was denied work opportunities, the court found no evidence that defendant "changed the terms and conditions of [plaintiff's] employment" and mere "subjective dissatisfaction" is insufficient).

Ms. Shaughnessy's demotion/relegation to a GA reporter is also actionable as part of her marginalization and is not a mere "shift change."  As alleged in the Complaint, a GA reporter position is a role that is generally reserved for entry-level reporters, involves less support, no cameraperson and less significant journalistic assignments – it marks a major departure in responsibility, freedom and prestige.  See ¶¶ 204-205, 307.  In contrast, Charter's cited cases involve completely minimal and distinguishable conduct.  See Yaohua Deng v. Compass Group USA, Inc., No. 08 Civ. 2842 (SJF)(ETB), 2010 WL 11507549 (E.D.N.Y. Feb. 17, 2010) (at summary judgment, a food service worker's claim that he was temporarily assigned to

11

dishwasher not actionable); <u>Leget v. Henderson</u>, No. 99 Civ. 3636 (DLC), 2001 WL 43615 (S.D.N.Y. Jan. 18, 2001) (at summary judgment, finding a postal worker's three-week transfer from a 6:00 a.m. shift to a 2:00 a.m. shift without more is not actionable).  Ms. Shaughnessy has clearly alleged that her demotion to a GA role was part of an ongoing series of unlawful conduct bolstered by numerous examples of disparate treatment towards her and other older women.

Charter's remaining argument that it is not "materially adverse" to change Ms. Shaughnessy's schedule and deny her promotional support provided to younger women and men is also incorrect.  As set forth above, Ms. Shaughnessy's claims are not predicated on whether these isolated acts are materially adverse but on Charter's entire pattern of conduct, which has been highly materially adverse to her career.  Together these acts create a "mosaic" of actionable discrimination. <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir. 2015).

As stated, Charter does not move to dismiss Ms. Shaughnessy's HWE claims, but it is self-evident that she has sufficiently pleaded such claims.  <u>See</u> <u>supra</u> at §§ III(A)-(B).

**D.**   **Jeanine Ramirez**

Ms. Ramirez has also easily satisfied her pleading standards.  Ms. Ramirez has alleged that she has (i) been passed up for a mid-morning anchor position in favor of younger women and men (¶¶ 135, 169-170); (ii) been denied fill-in anchor opportunities previously available to her in favor of younger women and men (¶¶ 147, 149); (iii) been passed up for additional anchor opportunities that have been given to younger women and men (¶¶ 175-177, 180);  (iv) not been provided promotional support/promotional video provided to the favored group (¶181-182); (v) she was demeaned and belittled by her supervisors (¶¶ 273-293); and (vi) Charter violated its own policies in refusing to properly address her complaints (¶¶ 274-277, 284-292).  Charter does not dispute that she has provided a sufficient basis to claim that this conduct is discriminatory.

Consistent with the others, Ms. Ramirez's claims – taken collectively – allege a systematic and discriminatory diminishment of the terms and conditions of her employment since Charter took over NY1, all in favor of younger women and men.  Charter's decision to discriminate against Ms. Ramirez in this manner has manifested itself through numerous actions ranging in severity.  However, taken together the conduct alleged amounts to a materially adverse workplace for Ms. Ramirez and at the same time preferential treatment towards younger women and men.  Charter's arguments that the refusal to provide Ms. Ramirez with anchoring opportunities and promotional support – which are provided to younger women and men – fails for the same reasons described above for Ms. Shaughnessy.  See supra at § III.C.

Charter does not argue that Ms. Ramirez failed to state a claim for discriminatory HWE – nor could it.  Id. at § A-B.  As such, Ms. Ramirez's HWE claims must remain.

### E.   Amanda Farinacci

Ms. Farinacci too has easily met the pleading standards.  Ms. Farinacci alleges that due to age and gender, *inter alia*, she (i) has been denied and passed up for fill-in opportunities behind the anchor desk in favor of younger women and men; (ii) has not been included in newly created anchoring roles such as *ATB* and *Money on 1*; (iii) was not provided with a promotional video; (iv) has been sidelined with respect to promotional appearances on Staten Island in favor of men; and (v) has not been permitted to attend receptions for awards that celebrate her accomplishments (¶¶ 158-164, 176-178, 228-234, 239-242).  Ms. Farinacci has been marginalized and stuck under a ceiling ever since Charter took over NY1.  This is a "mosaic" of actionable discrimination, as described by the Second Circuit.  Vega, 801 F.3d at 87.

Charter argues that Ms. Farinacci's allegations amount to mere "dissatisfaction with her work assignments."  See Defs.' Br. at p. 11.  That is not the case.  Ms. Farinacci has been passed

over for high-visibility anchoring opportunities that are not only significant job benefits, but also stepping-stones to greater and even higher-visibility, higher paying fulltime anchor positions – naturally, when another fulltime anchor position opens, Charter will give it to someone else who has had more anchor experience.  Charter's cited cases, as noted above, undermine the prospect that these allegations are insufficient.  See Harrison, 2001 WL 1154691, at *3 (holding there was no evidence in the record of a materially adverse action where plaintiff claimed *for the first time* in opposition to the summary judgment motion that she had requested a promotion and was never considered for it); Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP, 915 F. Supp. 2d 498 (S.D.N.Y. 2013) (finding that the plaintiff-attorney's disappointment regarding a case transfer did not constitute an adverse employment action where the plaintiff's client – and not the plaintiff's supervisor – made the decision regarding the case transfer).

Finally, Charter is completely incorrect that denying Ms. Farinacci fill-in anchor positions is not actionable because she later received some minimal opportunities after she filed complaints, but is still rarely given these chances.  Charter cites to Davis v. City Univ. of N.Y., No. 94 Civ. 7277 (SHS), 1996 WL 243256 (S.D.N.Y. May 9, 1996).  In Davis, the plaintiff, a professor, claimed that the "materially adverse change" in her employment was that defendants "delayed and nearly succeeded in depriving her" of tenure, and "attempted to improperly block" her promotion. Id. at *8.  In dismissing the Title VII claims, the Davis court stated that the plaintiff appeared "to claim that the 'materially adverse change' in her employment was the added inconvenience and anxiety she experienced because her tenure and promotion applications were delayed" even though she was ultimately tenured.  Id.  Obviously, Ms. Farinacci has not been promoted or become part of the fill-in anchor rotation, nor is she claiming mere anxiety associated with these employment decisions.

14

As with the other Plaintiffs, Charter does not appear to move to dismiss Ms. Farinacci's HWE claims.  As such, her HWE claim must remain.

**IV.**   **Charter is Not Permitted to Retaliate Against Plaintiffs**

    **A.**   **Applicable Standards**

A plaintiff states a retaliation claim if she alleges conduct that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  See Burlington, 548 U.S. at 54.  Although established law for 13 years, Charter never cites Burlington and attempts to conflate the "adverse action" standard of discrimination claims with the standards for retaliation.

Whether any particular conduct is retaliatory is a particularly fact-intensive inquiry.  See Burlington, 548 U.S. at 69 ("the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used."); Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 580 (2d Cir. 2011) (dissent) ("[V]iolations . . . are determined only after a searching review of all aspects of the challenged actions and the wider context in which they occurred . . . Jurors are obviously better suited to determining the social impact of contemporary workplace behavior than are judges.").

    **B.**   **Roma Torre**

Ms. Torre alleges that she engaged in various forms of protected activity, including complaints to management regarding favoritism towards others based on age and/or gender as well as filing this action.  ¶¶ 284, 308, 309-311, 314-317, 319, 320, 348-349.  Charter does not argue that Ms. Torre failed to allege protected activity but argues that she did not allege any actionable retaliation.  See Defs.' Br. at pp. 14-15.  Nothing could be further from reality.

Ms. Torre alleges that she engaged in protected acts as early as October 2017 and issued protected complaints several times thereafter. ¶¶ 309, 311, 314- 317, 319-320.  Ms. Torre has alleged substantial mistreatment thereafter: "relegating her to a mediocre studio without any support or resources that her male anchor counterparts receive and by failing to extend opportunities to her that are widely extended to younger women and men" (¶ 332); lack of production support (¶ 123); not being given promo videos only to be later given second-rate promo videos (¶¶ 183-188); being belittled by her boss for being a "complainer" (¶ 314); threatening to be removed from more on-air time (¶ 124); lack of promotional support (¶¶ 193- 201); lack of makeup support (¶¶ 221-222); failure to properly address discrimination complaints and comply with company-policy (¶¶ 308, 310, 313-319) (see supra at §III(B)); denial of World Cup assignment (¶¶ 350-362); ignored in contract renewal discussions (¶¶ 363-367); refusal to address coworker retaliation (¶¶ 376-387); refusal to adequately address complaints of coworker harassment (¶¶ 380-386); and failure to commemorate her show's anniversary (¶ 391).

Certainly, this conduct could "dissuade a reasonable worker" from engaging in protected acts.  See e.g. Duplan v. City of New York, 888 F.3d 612, 626 (2d Cir. 2018) ("Duplan alleges that each of the adverse actions alleged above occurred against a backdrop of continuing antagonism and frustration of his professional ambitions.  Following his 2011 complaints, his supervisors collectively and persistently discouraged him from remaining at the Department by ostracizing him, giving him insufficient work, and making clear to him that his career would not advance further by denying him every promotion and raise. Those allegations establish a drumbeat of retaliatory animus from which a plausible inference of causation can be drawn."); Curcio v. Roosevelt Union Free Sch. Dist., No. 10 Civ. 5612 (SJF)(AKT), 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012) (observing that a "pattern of antagonism" over the intervening

period may be sufficient to demonstrate retaliation); Hous. Works, Inc. v. City of New York, 72 F. Supp. 2d 402, 426 (S.D.N.Y. 1999) (same).

Charter also argues that the fact that *some* of the alleged unlawful conduct may have pre-dated *some* of her complaints and continued thereafter undermines her retaliation claims entirely. See Defs.' Br. p. at 14.  Of course, those issues formed the basis for her complaints.  Ms. Torre has alleged numerous retaliatory acts in the two years following her initial and reiterated complaints, and discovery will more fully parse out which particular adverse acts followed which complaints.  Duplan, 888 F.3d at 626 ("The district court, of course, remains free to re-assess the viability of these claims after discovery on a motion for summary judgment").

### C.   Kristen Shaughnessy

Ms. Shaughnessy clearly alleged she engaged in protected activity throughout the last several years at NY1, including (i) complaints to Mr. Proia in the fall of 2017 regarding the discriminatory failure to give her the opportunity to anchor the new mid-morning show and/or fill-in on the morning show (¶¶ 295-304); (ii) complaints in March 2018 that she "felt she was being passed over for better anchoring positions in favor of this 'preferred group'" (¶¶ 296-298); (iii) complaints that she "had been discriminated against [] and that the younger women and men were being favored" (¶ 284); (iv) complaints in August 2018 that "there was no one left to advocate for the older women reporters and anchors," (¶ 303); and (v) reiterated complaints in October, November and December 2018 that this conduct continued unabated (¶¶ 301-302, 305). Ms. Shaughnessy also engaged in a protected act with this action. ¶¶ 348-349.

It requires a complete ignorance of the law for Charter to argue that these allegations do not constitute protected activity.  There is nothing "generalized" about these complaints; the allegations expressly refer to complaints of discrimination and favoritism and not "mistreatment

generally."  Ms. Shaughnessy is not obligated to plead the details of her protected activity at a

heightened pleading standard as Charter suggests.  See Swierkiewicz v. Sorema N.A., 534 U.S.

506, 513 (2002) (complaints in discrimination cases "must satisfy only the simple requirements

of Rule 8(a)"); Boyer v. Syosset Cent. Sch. Dist., No. 07 Civ. 3520 (JFB)(ETB), 2008 WL

1766603, at *5 (E.D.N.Y. Apr. 14, 2008) (no heightened pleading standard in retaliation claims).

Defendant's primary cited case is irrelevant here.  In Anyachebelu v. Brooklyn Hospital

Center, No. 16 Civ. 3159 (DLI)(VMS), 2017 WL 9511073 at *15 (E.D.N.Y. July 20, 2017), the

court dismissed a retaliation claim because the plaintiff only pleaded "difference in treatment,"

but "nothing [that] would have allowed her employer to reasonably have understood that her

complaints to [be] directed at prohibited [discriminatory] conduct."  Charter cannot equate such

allegations in Anyachebelu, with Ms. Shaughnessy's allegations that she complained, *inter alia*,

she "felt she was being passed over for better anchoring positions in favor of this 'preferred

group,'" or that she "had been discriminated against for the reasons set forth above and on the

bases described above and that the younger women and men were being favored."  ¶¶ 284, 298.

Charter's argument that Ms. Shaughnessy failed to set forth a sufficient causal nexus

because there was a five-month gap between her August 2018 complaint and her January 2019

demotion to GA is incorrect.  First, the demotion is not the only alleged retaliatory act as

numerous retaliatory actions followed her initial complaint in the fall of 2017 and thereafter.  See

e.g. ¶¶ 295-296, 299-303.  Second, Ms. Shaughnessy's demotion occurred within one month

from her reiterated protected complaints which she alleged were made in December 2018.

¶¶305-307.  Third, even a five-month gap will not cause dismissal of a pleading.  Gorzynski v.

JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010)("[W]e have previously held that five

months is not too long to find the causal relationship."); Guzman v. News Corp., 09 Civ. 09323

(LGS), 2013 WL 5807058 at *21 (S.D.N.Y. Oct. 28, 2013) (seven month gap sufficient); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980) (eight month gap sufficient).

Finally, Charter's argument that Ms. Shaughnessy's demotion to GA does not constitute an "adverse action" and is therefore not actionable is an attempt to conflate the slightly stricter "adverse action" standard with the more lenient "might have dissuaded a reasonable worker" test. Clearly, demoting a 25-year veteran anchor/reporter into an entry-level reporter position with no cameraperson, no editor, no other support or assistance and involving less substantive journalistic material might dissuade an employee from raising a protected complaint. See e.g. Boyer, 2008 WL 1766603, at *3 (E.D.N.Y. Apr. 14, 2008) (plaintiff/custodian stated a claim for retaliation where adverse act was being transferred to another school); Duplan, 888 F.3d at 626.

### D.    Jeanine Ramirez

Ms. Ramirez has also easily satisfied her pleading obligations for a retaliation claim; she alleged she complained as follows: (i) "In or around July 2018, Ms. Ramirez filed an internal discrimination complaint" (¶ 147); (ii) in July 2018, regarding being cursed at and humiliated in the newsroom by an older man which was followed by "complaints about the broad discriminatory treatment pervading the workplace" (¶¶ 273-275); (iii) soon after, she complained she "had been discriminated against [] and that the younger women and men were being favored" (¶ 284,); and (iv) she complained "that younger women and men were being favored" (¶ 290). Nonetheless, Charter argues that "Ramirez fails to allege she engaged in any protected activity" as if some heightened pleading standard applies – it does not. See supra at §III(C).

Charter also argues that certain of Ms. Ramirez's claims pre-date any alleged protected activity (namely, the initial drop-off in her fill-in anchoring opportunities) and are therefore not actionable as retaliation. See Defs.' Br. at p. 17. As stated above, this is hardly surprising as

such conduct formed the basis for Ms. Ramirez's initial complaints.  However, Ms. Ramirez clearly alleged numerous retaliatory acts post-dating her complaints, *i.e.,* "thereafter, Ms. Ramirez's fill-in opportunities came to an absolute halt – Ms. Ramirez was not given a single weekday fill-in opportunity the remainder of 2018, nor has she been given any chances in 2019." ¶147.  Ms. Ramirez also alleges following her protected complaints, NY1 failed to extend anchor training (¶¶ 157, 288); failed to accommodate her when she had an injury (¶ 250); gave her a negative review (¶ 290);[4] failed to address coworker retaliation (¶ 379); failed to respond to her requests for assistance post-lawsuit (¶ 385); and failed to include her in a promotional event at Coney Island (¶ 390).  This is more than sufficient.  See e.g. Boyer, 2008 WL 1766603, at *3.

### E.   Amanda Farinacci

Contrary to Charter's contention, Ms. Farinacci has sufficiently pled allegations to sustain a claim of retaliation.  Ms. Farinacci alleged she complained to management and Human Resources ("HR") as follows: (i) "Ms. Farinacci met with Mr. Proia several times to discuss her lack of anchoring opportunities" and noted that she has been passed over for opportunities that went to a younger woman (¶ 335); (ii) in the winter of 2019, Ms. Farinacci complained about "favoritism towards the younger women" (¶ 341); and (iii) she stated she "had been discriminated against for the reasons and on the bases described above and that the younger women and men were being favored." (¶ 284).  Ms. Farinacci reiterated these complaints and escalated them to others in management several times thereafter, including during "culture meetings." ¶¶ 335-336, 341-342, 345.  These allegations are more than sufficient at the pleading stage.  See supra at §II.

---

[4]   Ms. Ramirez never alleged that her negative review in March 2019 was retaliation solely for her July 2018 complaint; she complained numerous times thereafter.  See Defs.' Br. at p. 18. Charter leaps to this conclusion solely to disingenuously argue lack of temporal proximity.

Charter also argues that Ms. Farinacci fails to allege "an adverse employment action as a result of her purported complaints." See Defs.' Br. at p. 19.  This is incorrect.  Ms. Farinacci alleges numerous retaliatory acts following her initial complaints, including but not limited to: (i) "during the November/December holidays, typically a time when many fill-in opportunities arrive, younger talent was given the anchoring desk and Ms. Farinacci was not." (¶ 337); (ii) Ms. Rabinovich "attacked" Ms. Farinacci for reaching out to HR (¶ 340); (iii) her managers began to "ignore" her (¶ 346); (iv) she was specifically excluded from a promo touting the company's devotion to covering local NYC communities even though she reports on Staten Island daily (¶ 394); (v) she has not been asked to anchor *Money on 1* (¶¶ 177-179);  (vi) she has been sidelined at promotional appearances on Staten Island in favor of men (¶¶ 228-234); and (vii) has not been permitted to attend award receptions that celebrate her accomplishments (¶¶ 239-242).

This is more than enough at the pleading stage to "dissuade a reasonable worker" from engaging in protected activity.  See e.g. Tournois v. Waterloo Premium Outlet/Simon Prop. Grp., Inc., No. 12 Civ. 6501T, 2013 WL 3936465, at *5 (W.D.N.Y. July 30, 2013) (plausible retaliation claim where coworkers were permitted to change schedules but he was not, and plaintiff was being followed by management and mocked in front of coworkers); Patterson v. Xerox Corp., 732 F. Supp. 2d 181, 192 (W.D.N.Y. 2010) (claims sustainable where supervisor attempted to discourage plaintiff from making complaints and threatened to eliminate his job).

### F.     Post-Lawsuit Retaliation is Actionable

Charter oddly argues it cannot be liable for retaliation following commencement of this action.  See Defs.' Br. at 20.  The conduct perpetrated post-lawsuit – see supra at §§IV(A)-(E) – is part of a "drumbeat" of ongoing retaliation.  See e.g. Duplan, 888 F.3d at 626.  Charter cannot legitimately argue that a reasonable employee would not be dissuaded from complaining if she

were removed from important assignments (¶¶ 350-362); ignored in contract renewal discussions contrary to past discussions (¶¶ 363-367); condoned, acquiesced to or actively sought to publish a disparaging story in the NY Post (¶¶ 376-378); refused to address coworker harassment and properly address a complaint (¶¶ 379-387); and denied promotional opportunities (¶¶ 388-396).

### G.   Charter's Argument Regarding Reputational Harm is Confounding

Retaliation is actionable if it rises to the standard articulated supra at §IV(A).  If Charter believes reputational harm to support a damages award requires harms to job prospects, it is wrong and has cited no such authority – but it can nonetheless try to argue that incorrect position at trial.  See Defs.' Br. at 19 (citing Gonzalez v. Bratton, 147 F. Supp. 2d 180, 196 (S.D.N.Y. 2001), aff'd, 48 Fed. Appx. 363 (2d Cir. 2002) (holding in post-trial motion that retaliatory conduct was actionable because it impacted future employment); Walker v. City of New York, No. 11 Civ. 2689 (KAM)(RML), 2013 WL 991101, at *3 (E.D.N.Y. Feb. 7, 2013), report and recommendation adopted, No. 11 Civ. 2689 (KAM)(RML), 2013 WL 990999 (E.D.N.Y. Mar. 13, 2013) (pro se plaintiff did not allege any materially adverse action; among the many reasons for insufficiency was that "she does not claim that defendants' actions contributed to any potential employer's decision not to hire her.")).

### V.   Roma Torre Has Stated an Equal Pay Claim

An Equal Pay Act ("EPA") and New York Equal Pay Law ("EPL") plaintiff need only plausibly allege "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3)

the jobs are performed under similar working conditions." <u>EEOC v. Port Auth. of N.Y. & N.J.</u>, 768 F.3d 247, 254–55 (2d Cir. 2014).[5]

Ms. Torre has alleged that she is a daily midweek anchor paid less than her male counterparts, who have common responsibilities, including preparing for and anchoring a new program on NY1, and the work involves the same skill, effort and responsibility.  ¶¶ 255-263. Ms. Torre has even identified a male comparator who has worked at NY1 for less time than her – Pat Kiernan – who is paid substantially more than her.  ¶¶ 256-257.

This Court has found this to be sufficient for pleading.  <u>See</u> <u>Tulino v. City of New York</u>, No. 15 Civ. 7106 (JMF), 2016 WL 2967847 (S.D.N.Y. May 19, 2016) (sustaining EPA claim where plaintiffs' allegations of comparable duties were similarly straightforward to this matter; *i.e.*, "Both Bigelow and Plaintiff were responsible for managing Agency contracts with service providers yet were not equally compensated.") (<u>see</u> Ex. A at ¶ 100); <u>Kassman et al. v. KPMG LLP</u>, 925 F. Supp. 2d 453, 471 (S.D.N.Y. 2013) (J. Furman) (allegation that she was paid "less than her male counterparts" and gave one coworker example who "joined KPMG after Ms. Kassman, worked under the same Partner, [and] worked on engagements for similar clients [, and] . . . performed the same tasks" deemed sufficient) (<u>see</u> Ex. B at ¶ 82; <u>see</u> <u>also</u> ¶ 280); <u>see</u> <u>also</u> <u>Fairchild v. Quinnipiac University</u>, 16 F. Supp. 3d 89, 96 (D. Conn. 2014) (women's softball coach alleged *only* paid unequal "wages and benefits" as compared to "similarly-situated male [coaches]" and court held, "[i]n these circumstances, [] Quinnipiac is well aware of the potential universe of similarly-situated make head coaches whose salaries might be higher than Fairchild's . . .").  Ms. Torre alleged at least as much as <u>Tulino</u>, <u>Kassman</u> and <u>Fairchild</u>.

---

[5]     <u>Kairam v. W. Side GI, LLC</u>, No. 18 Civ. 01005 (AT)(SDA), 2018 WL 6717280, at *4 (S.D.N.Y. Nov. 9, 2018) incorrectly states the pleading standard is "demanding,"  by citing to <u>E.E.O.C.</u>, 768 F.3d at 255, which addressed an EPA claim on summary judgment.

Defendant's cases are easily distinguishable.  See <u>Wu v. Good Samaritan Hospital Med.</u> <u>Cntr.</u>, No. 17 Civ. 4247 (SJF)(ARL), 2019 WL 2754865 at *4 (E.D.N.Y. July 2, 2019) (plaintiff failed to state EPA claim where she "has not alleged any facts upon which her beliefs are founded"); <u>Kairam</u>, 2018 WL 6717280 at *4 (EPA claim deficient because comparator paid "the same amount" and plaintiff "did not allege any facts regarding common duties or job content."); <u>Eng v. City of New York</u>, 715 Fed. Appx. 49 (2d Cir. 2017) (EPA claim not sustainable where allegations regarding comparators were contradictory and lacked information on common tasks).

## VI.   <u>Charter's Motion To Strike Should Be Denied</u>

On a motion to strike, a party must show: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." <u>Roe v. City of</u> <u>N.Y.</u>, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).  Motions to strike are "disfavored, and should be granted only when there is a strong reason for doing so."  See <u>e.g.</u> <u>Winfield v. Citibank</u>, No. 10 Civ. 7304 (JGK), 2012 WL 266887 at * 9 (S.D.N.Y. January 30, 2012).  Allegations will only be stricken if "[r]edundant, impertinent, or scandalous matter." Fed. R. Civ P. 12(f).

Here, each of the allegations Charter seeks to strike have more than sufficient relevance. The New York Times article, other cases cited and reference to the #SeeHer initiative (¶2, n. 2, ¶3, ¶8-9) provide background and context on Plaintiffs' allegations.  See <u>e.g.</u> <u>Lynch v.</u> <u>Southampton Animal Shelter Found. Inc.</u>, 278 F.R.D. 55, 67–68 (E.D.N.Y. 2011) ("even assuming that a portion of the background material is irrelevant or immaterial, allegations that supply background or historical material or other matter of an evidentiary nature normally will not be stricken from the pleadings unless they are unduly prejudicial to the defendant."); <u>Fuchs</u>

Sugars & Syrups, Inc. v. Amstar Corp., 402 F. Supp. 636, 637-38 (S.D.N.Y. 1975) (same). Determinative here as well, Charter has not even argued that these allegations cause prejudice.

Charter also cannot possibly believe that allegations of parallel discrimination towards others "bear no relationship" to Plaintiffs' claims. "It is well established in the Second Circuit that one way to establish [discrimination or] retaliation is to demonstrate that other people who have participated in protected activity have been treated adversely and similarly to plaintiffs." Gaffney v. Dept. of Information Tech., 579 F. Supp. 2d 455, 460 (S.D.N.Y. 2008); see also e.g. Sprint v. Mendelsohn, 552 U.S. 379, 387 (2008). Again, Charter has not argued any prejudice as these other discrimination cases cited are matters of public record.

Finally, Charter cannot credibly argue that Plaintiffs' claims should be dismissed as "trivial" or "petty" when they involve a widely recognized form of under-appreciated discrimination and public figures and elected officials have condemned the behavior. Moreover, the references made to those public statements are also factually tied to substantive allegations of discrimination and retaliation and are not gratuitous as Charter asserts.

Plaintiffs have simply provided a fulsome picture of their claims and their industry. Charter cannot dictate the manner in which Plaintiffs set forth this information, or force Plaintiffs to do so in a way which minimizes the seriousness of these issues. See e.g. Oram v. SoulCycle LLC, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013) ("a plaintiff is not required to "conform allegations in [her] complaint to [defendant's] stylistic tastes or preferences.").

## VII.   Plaintiffs Properly Amended the Complaint

Charter argues that Plaintiffs' allegations should be stricken because they did not file a Rule 15(d) motion to file a supplemental pleading. Charter has not cited any authority stating that a plaintiff cannot include new allegations in a complaint amended pursuant to Rule 15(a).

**<u>CONCLUSION</u>**

Wherefore, Plaintiffs respectfully request an order denying Defendant's partial motion to dismiss and for such other and further relief deemed just and proper.

Dated: November 26, 2019
       New York, New York

Respectfully submitted,

WIGDOR LLP

By: _____
     Douglas H. Wigdor
     David E. Gottlieb
     Julia Elmaleh-Sachs

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
jelmaleh-sachs@wigdorlaw.com

*Counsel for Plaintiffs*

26