UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
:
ROMA TORRE et al.,                                                    :
:
                                Plaintiffs,           :
:    19-CV-5708 (JMF)
           -v-                                                    :
:    OPINION AND ORDER
CHARTER COMMUNICATIONS, INC. *d/b/a*                                  :
SPECTRUM,                                                             :
:
                                Defendant.            :
:
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiffs Roma Torre, Kristen Shaughnessy, Jeanine Ramirez, and Amanda Farinacci are veteran reporters for New York One ("NY1"), a television news station devoted to covering the New York City metro-area. Plaintiffs claim that since the merger of NY1's former owner and operator Time Warner Cable with Charter Communications, Inc. ("Charter") in 2016 they have been subjected to both sex and age discrimination and, when they complained, to retaliation. They bring claims on these bases under federal, state, and local law. Charter now moves, pursuant to Rule 12(b)(6) and (f) of the Federal Rules of Civil Procedure, to dismiss most of Plaintiffs' claims and to strike portions of their Amended Complaint. *See* ECF No. 35. For the reasons that follow, Charter's motion is granted in part and denied in part.

## BACKGROUND

        The following facts — drawn from the Amended Complaint (the "Complaint"), ECF No. 25 ("Compl."), and documents that are incorporated by reference in, or integral to, the Complaint — are assumed to be true for purposes of this motion. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

NY1, a television news station devoted to covering the New York metropolitan area, was founded in 1992. *See* Compl. ¶ 30. Charter (which also does business under the name Spectrum) is a publicly traded corporation that now owns and operates NY1. *See id.* ¶ 29. In May 2016, Charter merged with Time Warner Cable. *See id.* ¶ 34. "Shortly thereafter," the Complaint alleges, "NY1 underwent a massive overhaul and restructuring in which numerous long-tenured, older employees (men and women) were terminated . . . ." *Id.*

Plaintiffs are all women over the age of forty and, collectively, have almost a century of experience working at NY1 as reporters. *See id.* ¶¶ 1, 24-26, 28. Roma Torre, who was sixty-one years old when the Complaint was filed, was NY1's first on-air hire. *See id.* ¶¶ 24, 46. She later served as NY1's midweek anchor and theater reviewer, providing taped reviews for *NY1 On Stage* ("*On Stage*"). Compl. ¶¶ 47-49, 229. Before Charter took over, Torre was on air for six hours each weekday: From 10:00 a.m. to 12:00 p.m., she was alternated with morning anchor Pat Kiernan; between 12:00 p.m. and 4:00 p.m., she was on air alone; and from 4:00 p.m. to 6:00 p.m., she alternated with night anchor Lewis Dodley. *Id.* ¶ 52. But following Time Warner Cable's merger with Charter, and the naming of Anthony Proia and Melissa Rabinovich as News Directors, Torre's on-air time was, without warning, reduced in favor of creating new shows for younger women and men. *Id.* ¶¶ 37, 112. NY1 also stopped featuring her taped reviews on *On Stage*. *See id.* ¶¶ 223. At the time the Complaint was filed, Torre had only one hour of live solo airtime for a 12:00 p.m. show called *Your News Live at Noon* and two hours later in the day from 3:00 p.m. to 5:00 p.m. *Id.* ¶ 113.

Adding insult to injury, Charter relegated Torre to an inferior studio, Studio B, *id.* ¶¶ 121, 196, and provided her with less production support, *id.* ¶ 218-20, no coaching support, *id.* ¶¶ 155, 157, and no personal makeup services, *id.* ¶¶ 221-22. By contrast, Charter provided higher quality studio space, as well as production, coaching, and personal makeup services to younger

women and men.  *Id*. ¶¶ 121, 155, 217-221, 357.  To promote its brand, NY1 also focused its marketing efforts on the younger talent by featuring them in high-quality, professional-grade promotional videos that aired on heavy rotation.  *Id.* ¶ 182.  By contrast, it was only after "several impassioned pleas" that NY1 provided Torre with a sub-par promotional video that infrequently aired and featured outdated footage of her and her work.  *Id*. ¶¶ 183-86.  The Complaint also contrasts the treatment of Torre with the treatment of Pat Kiernan, a male reporter who, like Torre, serves as a mid-week anchor, but who has been at NY1 for five years fewer than Torre.  *Id*. ¶¶ 192-97.  NY1 created a three-hour newly formatted morning show for Kiernan called *Mornings on 1* and provided him with a multi-million-dollar state-of-the-art studio known as Studio A.  *Id*. ¶¶ 121-22, 357.  While Torre's 25th anniversary at NY1 received little attention, Kiernan's 20th year anniversary was prominently celebrated.  *Id*. ¶¶ 192-97.  Moreover, "upon information and belief, . . . Torre's salary is less than half that of . . . Kiernan and is substantially less than other male anchors" with "similar skill"; "similar, or even less experience"; and similar "roles and/or responsibilities" to Torre's, "including anchoring a news program on NY1."  *Id*. ¶¶ 256-57, 261-63.

      The Complaint alleges that the other Plaintiffs fared similarly.  Kristen Shaughnessy, who was fifty-one years old when the Complaint was filed, started working for NY1 in 1995 and eventually became the primary weekday morning fill-in anchor as well as a weekend anchor and midweek reporter.  *Id*. ¶¶ 63-67.  Jeanine Ramirez, who was forty-nine years old when the Complaint was filed, started working at NY1 in 1996 and, with time, became a full-time weekday Brooklyn reporter, held the Sunday night anchor position, and occasionally filled in for the morning show when Shaughnessy was not available.  *Id*. ¶¶ 79-82.  Last but not least, Amanda Farinacci, who was forty years old when the Complaint was filed, started at NY1 as an intern in 2000 and worked throughout her tenure as a Staten Island midweek reporter.  *Id*. ¶¶ 97-

99. Nevertheless, when NY1 created new mid-morning anchor roles for a segment called *Around the Boroughs*, none of these women were considered; instead, the positions were given to younger women and men. *Id*. ¶¶ 174-79. Nor were they considered for several additional anchor positions, such as the one created for and filled by Kiernan on *Mornings on 1*. *Id*. ¶ 177.

Like Torre, Shaughnessy and Ramirez were not offered the opportunity to create high-quality promotional content. *Id*. ¶¶ 182, 189. Although Farinacci was permitted to make a promotional video in mid-2018, it took several months to air after she raised a complaint; by contrast, the promotional videos for the younger women and men started airing in mid-2017. *Id*. ¶ 189 n.21. The three women were allegedly overlooked and marginalized in other ways as well. On two occasions, for example, Shaughnessy was asked, without warning, to fill in as a "General Assignment" ("GA") reporter, an entry-level role with no field or production support, whereas the younger reporters were given advanced reporting assignments. *Id*. ¶¶ 204-10. Shaughnessy and Ramirez were given fewer fill-in anchoring opportunities in favor of younger women and men, *id*. ¶¶ 127-138, 141, 143-149; and Farinacci, although not a regular fill-in anchor, was never considered for the opportunity, *id*. ¶¶ 159-72, 337. On another occasion, in June 2018, Farinacci was overlooked to serve as a panelist at a debate held on Staten Island between then-congressional candidates Michael Grimm and Dan Donovan, despite covering Staten Island for fifteen years and having previously interviewed Grimm. *Id*. ¶¶ 228-31. Instead, Anthony Pascale, a forty-four-year-old male reporter, was selected. *Id*. ¶¶ 39, 231. This was not the first time Pascale was favored over her — in 2017, Farinacci produced a documentary piece called *Build It Broke*. *Id*. ¶ 233. Although NY1 held a live town hall event after the documentary aired, NY1 asked Pascale to host it; Farinacci "sat in the audience like member of the public." *Id*. ¶ 234.

4

In 2018 and 2019, Plaintiffs each raised complaints of gender and age discrimination with Proia, Rabinovich, or both. According to the Complaint, however, their complaints were either ignored or followed by a further reduction in their responsibilities. For instance, after Shaughnessy raised complaints in August 2018, she was assigned to the GA role in January 2019 and more frequently thereafter. *See id*. ¶¶ 303, 305-06. And after Plaintiffs filed this lawsuit, Torre was denied the opportunity to host the July 2019 parade celebrating the U.S. Women's World Cup soccer championship (the "Parade"). *See id*. ¶¶ 350, 352.

## LEGAL STANDARDS

In evaluating Charter's motion to dismiss, the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Plaintiffs' favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim survives a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Significantly, where, as here, a plaintiff brings an employment discrimination claim, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal

5

inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *accord Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

Plaintiffs bring claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-107 *et seq.*  Torre also asserts a claim under the Equal Pay Act, 29 U.S.C. § 206(d), and the New York Equal Pay Law ("NYEPL"), N.Y. Labor Law § 194.  Charter does not move to dismiss Shaughnessy's or Ramirez's discrimination claims regarding their mid-morning or anchor fill-in assignments, *see* ECF No. 36 ("Def.'s Mem."), at 10 n.5; ECF No. 51 ("Def.'s Reply"), at 1 n.2, but it does move to dismiss their discrimination claims based on their other working conditions, their retaliation claims, and all of Torre's and Farinacci's claims.  The Court will begin with Torre's disparate-pay claims under the Equal Pay Act, Title VII, and state and municipal law; then turn to Plaintiffs' remaining claims of gender and age discrimination under Title VII, the ADEA, the NYSHRL, and the NYCHRL; and then finish with Plaintiffs' retaliation claims.  Finally, the Court will briefly address Charter's motion to strike certain allegations from the Complaint.

### A. Torre's Disparate-Pay Claims

Torre's disparate-pay claims are brought under the Equal Pay Act, Title VII, the NYSHRL, and the NYCHRL.  The Equal Pay Act "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Craven v. City of New York*, No.

19-CV-1486 (JMF), 2020 WL 2765694, at *7 (S.D.N.Y. May 28, 2020) (quoting *Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 25 (2d Cir. 2019) (summary order)). Specifically, "to prove a violation of the [Equal Pay Act and the NYEPL], a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254-55 (2d Cir. 2014) (internal quotation marks and alterations omitted); *see also Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 570 (S.D.N.Y. 2012) ("Claims for violations of the Equal Pay Act and the New York State Equal Pay [Law] may be evaluated under the same standard." (internal quotation marks omitted)), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order).

Title VII, the NYSHRL, and the NYCHRL, meanwhile, "make[] actionable *any* form of sex-based compensation discrimination." *Lenzi v. Systemax, Inc*., 944 F.3d 97, 110 (2d Cir. 2019) (citing 42 U.S.C. § 2000e-2(a)(1)). Claims under these laws are subject to the well-known burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *4 (S.D.N.Y. Feb. 26, 2015); *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *4 (S.D.N.Y. Sept. 27, 2013).[1] At the motion-to-dismiss stage, however, only the first step — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue. *See Littlejohn*, 795 F.3d at 311. To establish a *prima facie* case under Title VII and the NYSHRL, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job

---

[1] Strictly speaking, it is "unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Nevertheless, courts in this Circuit "[t]ypically . . . apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework." *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014) (alterations and internal quotation marks omitted).

in question, or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination.  *See, e.g.*, *Jeune*, 2014 WL 83851, at *4.  The showing required for NYCHRL claims differs slightly, as the adverse action need not be "material"; instead, a plaintiff need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)).

      Measured against these standards, Torre raises a plausible claim under the Equal Pay Act and the NYEPL.  The Complaint alleges that Torre "has been dramatically underpaid relative to her male daily on-air counterparts who have common roles and/responsibilities, including anchoring a news program on NY1."  Compl. ¶ 256; *see* ECF No. 48 ("Pls.' Opp'n"), at 23.  In particular, Torre identifies Kiernan as an example of "a male comparator who has worked at NY1 for less time than her," has "similar responsibilities" as the anchor of a mid-week program, yet is "paid substantially more," *id.* (citing Compl. ¶¶ 256-57); *see* Compl. ¶ 257 (alleging that Torre's salary "is less than half that of Mr. Kiernan"); *see also, e.g., Isbell v. City of New York*, 316 F. Supp. 3d 571, 589 (S.D.N.Y. 2018) (holding that identification of a single comparator suffices at the pleading stage).  Contrary to Charter's contentions, the fact that Kiernan leads the "most watched mid-week show" is not sufficient at this stage to defeat her claim.  Def.'s Mem. 22 (quoting Compl. ¶¶ 121-22); *cf. Craven*, 2020 WL 2765694, at *5, 7 (holding that the defendants' arguments rationalizing the plaintiff's differential pay were insufficient to dismiss Title VII and Equal Pay Act claims at the pleading stage).  Instead, Torre's "allegations that she was paid less than" Kiernan "and that that her responsibilities were similar" to his — at least in terms of the time they spend on air and preparing — "are sufficient to state an Equal Pay Act claim." *Craven*, 2020 WL 2765694, at *7; *see* Compl. ¶¶ 113, 257-60, 357.

8

For similar reasons, Torre alleges plausible disparate-pay claims under Title VII, the NYSHRL, and the NYCHRL. There is no dispute that Torre (and the other Plaintiffs, for that matter) satisfy the first two prongs of the *prima facie* test. As to the third, satisfaction of the Equal Pay Act's unequal-pay-for-equal-work standard is sufficient (although not necessary) to establish an adverse employment action. *See Lenzi*, 944 F.3d at 110; *Butterfield-Bajinan v. City of New York*, No. 16-CV-5919 (RJS), 2017 WL 4045175, at *4 (S.D.N.Y. Sept. 11, 2017) (Sullivan, J.). And finally, Torre satisfies her "minimal burden" of alleging facts "suggesting an inference of discriminatory motivation" for this action. *Vega*, 801 F.3d at 85 (internal quotation marks omitted). Among other things, Torre alleges that "similarly situated . . . male colleague[s]" were "paid more than she was, despite having [similar] responsibilities and equal or lesser credentials." *Craven*, 2020 WL 2765694, at *5. Additionally, Torre's allegations that Charter consistently showed favoritism towards Kiernan "provide 'relevant background evidence' by shedding light on Defendant's motivation." *Vega*, 801 F.3d at 88 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)); *see also Littlejohn*, 795 F.3d at 312 ("An inference of discrimination can arise from circumstances including, but not limited to, . . . the more favorable treatment of employees not in the protected group . . . ." (internal quotation marks omitted)). "Taken together, these allegations create a 'mosaic' of information supporting an inference of discrimination." *Craven*, 2020 WL 2765694, at *5 (quoting *Vega*, 801 F.3d at 86-87). Accordingly, Charter's motion to dismiss Torre's disparate-pay claims is denied.

**B. Plaintiffs' Other Discrimination Claims**

The Court turns, then, to Plaintiffs' other discrimination claims. Wisely, Charter does not dispute that the allegations in the Complaint are sufficient to raise a minimal inference of age and gender discrimination. Among other things, Plaintiffs' allegations that Charter repeatedly limited Plaintiffs' access to career-advancing services and opportunities while offering the same

9

to less credentialed younger men and women — several of whom are identified by name in the Complaint, *see, e.g.*, Compl. ¶¶ 114, 121, 125, 155, 175, 177, *cf. Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 32 (2d Cir. 2016) (summary order) (affirming the dismissal of an age discrimination claim because of the absence of the absence of specific allegations about other employees) — "are plainly sufficient to give plausible support to the minimal inference of the requisite discriminatory causality," *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 519 (S.D.N.Y. 2017) (internal quotation marks omitted). Instead, Charter's principal argument is that Plaintiffs' other age and gender discrimination claims must be dismissed because Plaintiffs did not experience events that amount to adverse employment actions as a matter of law. Def.'s Mem. 6-12. The Court disagrees.

An adverse employment action is a materially adverse change in the terms and conditions of employment. *See, e.g.*, *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). To meet that standard, an action must be more disruptive than "a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)). That is, an adverse employment action is material only if it is "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Albuja v. Nat'l Broad. Co. Universal*, 851 F. Supp. 2d 599, 606 (S.D.N.Y. 2012) (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997)). A plaintiff can show this by presenting an employment action that "effected the deprivation of 'some "tangible job benefits" such as "compensation, terms, conditions, or privileges" of employment.'" *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). Courts have emphasized, however, that "[t]here is no bright-line rule as to what constitutes a 'materially adverse change,' and courts must review the circumstances of each case to determine whether a challenged employment action is sufficiently significant to serve as the basis for a

claim of discrimination." *Durick v. N.Y.C. Dep't of Educ.*, 202 F. Supp. 3d 277, 287 (E.D.N.Y. 2016).

Measured against these standards, Plaintiffs' claims cannot be dismissed as a matter of law. Contrary to Charter's contentions, in the unique circumstances of a broadcast news channel, relegating a senior reporter to an inferior studio, reducing her on-air time, and depriving her of services needed to produce a quality news show constitute an adverse employment action. In arguing otherwise, Charter relies on *MacAlister v. Millenium Hotels & Resorts*, No. 17-CV-6189 (ER), 2018 WL 5886440 (S.D.N.Y. Nov. 8, 2018). *See* Def.'s Mem. 6. But *MacAlister* is easily distinguishable. As Plaintiffs more convincingly argue, for example, Torre's reassignment to Studio B was "accompanied by a loss of status, and a 'clouding of responsibilities,'" that, together with the reduction in on-air time, "can be materially adverse" given its likely effect on her show's viewership and ratings. *MacAlister*, 2018 WL 5886440, at *4 (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)); *see also, e.g.*, *Collins v. Illinois*, 830 F.2d 692, 704 (7th Cir. 1987) (holding that the denial of an office and telephone, combined with reduced visibility and a change in assignments from consulting to reference work, amounted to an adverse employment action). Even Charter seems to acknowledge that production quality and viewership may influence how much a reporter earns. *See* Def.'s Mem. 22-23. It follows that depriving Torre of a quality studio, reducing her on-air time, and denying her quality production services plausibly amounts to an adverse employment action.

Relatedly, Plaintiffs plausibly allege that they were materially disadvantaged when they were not provided coaching services and were denied opportunities to participate in Charter's higher visibility shows and promotions. *See* Pls.' Opp'n 6, 10, 12. Conspicuously, Charter does not even address Plaintiffs' arguments regarding coaching support, perhaps because denying an employee the opportunity to attend trainings or receive services that "contribute[] significantly to

the employee's professional advancement" does qualify as a materially adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006); *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) (summary order). Instead, Charter's principal contention is that denying Shaughnessy, Ramirez, and Farinacci promotional content and the chance to appear on *Around the Boroughs* or *Mornings on 1* were "trivial" harms. Def.'s Mem. 7-11. But changes in assignments or work duties may constitute an adverse employment action if the changes are accompanied by a decrease in salary or work hours, or another significant detrimental effect. *See Brown v. Snow*, No. 02-CV-7985 (GEL), 2006 WL 623594, at *5 (S.D.N.Y. Mar. 13, 2006) (Lynch, J.), *aff'd sub nom. Brown v. Paulson*, 236 F. App'x 654 (2d Cir. 2007) (summary order). Moreover, beyond dissatisfaction with one's assignments, failure to assign an employee to temporary responsibilities may be an adverse employment action where, as here, Plaintiffs allege that the temporary assignment came with tangible, not speculative, benefits. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 225-26 (2d Cir. 2004) (internal quotation marks omitted)); *cf. Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (refusing to allow an employee to compete for a position may be an adverse employment action). Specifically, Plaintiffs allege that Charter, in only considering younger talent and men for high-visibility roles, effectively denied Plaintiffs the opportunity to compete for career-advancing exposure. More than merely suffering reputational harm, Plaintiffs plausibly allege that this decreased visibility — and other reductions in their on-air time — naturally led to a decrease in tangible benefits, namely the possibility of further advancement. *See, e.g.*, *Bonenberger v. St. Louis Metro. Police Dep't*, 956 F. Supp. 2d 1059, 1067 (E.D. Mo. 2013).

In light of the foregoing, Plaintiffs' primary sex and age discrimination claims are sufficient to survive Charter's motion.[2]  But that is not the end of the matter because Plaintiffs, in their opposition brief, assert that they also bring "hostile work environment" claims.  *See* Pls.' Opp'n 2, 6, 9-10, 12-13.  That assertion aside, however, their Complaint does not actually include any such claims.  *See* Compl. ¶¶ 397-457.  Even if it did, such a claim would plainly fail under federal and state law.  Disregarding Plaintiffs' conclusory assertions that their "work conditions have been altered for the worse or are inferior and that [they] ha[ve] been treated less well," Pls.' Opp'n 9-10, 12 (internal quotation marks omitted), Plaintiffs do not plausibly plead that they experienced conditions that are sufficiently severe to constitute a hostile work environment.  *See, e.g.*, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("In order to establish a hostile work environment claim under Title VII [and the ADEA], a plaintiff must . . . show that the workplace is permeated with *discriminatory intimidation, ridicule, and insult*, that is *sufficiently severe* or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (emphases added) (internal quotation marks omitted)).  Accordingly, to the extent that the Complaint does include a hostile work environment claim under Title VII, the ADEA, or the NYSHRL, these claims are dismissed.  *See, e.g.*, *Shultz v. Congregation Shearith Isr. of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017).  To state a hostile work environment claim under the NYCHRL, by contrast, "a

---

[2]     Given that each Plaintiff plausibly alleges at least one adverse employment action, the Court need not and does not resolve at this stage whether Charter's other alleged conduct — for example, its refusal to provide personal makeup services or quality promotional advertisements for Plaintiffs, its demotion of Shaughnessy to a GA role and imposition of other schedule changes; its sidelining of Ramirez and Farinacci at live and celebratory events; and its failure to investigate Plaintiffs' complaints of discrimination, *see* Def.'s Mem. 8-12 — constitute adverse employment actions.  It is worth noting, however, that even if these other actions do not, on their own terms or taken together, qualify as adverse employment actions, they may contribute to a "mosaic" of information supporting an inference of discrimination.  *Cf. Vega*, 801 F.3d at 86-87; *Petrosino*, 385 F.3d at 220.

plaintiff must simply allege facts tending to show they were subject to unwanted gender-based conduct. Significantly, the NYCHRL imposes liability for harassing conduct even if that conduct does not qualify as severe or pervasive, and questions of severity and pervasiveness go only to the question of damages, not liability." *Tulino v. City of New York*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *4 (S.D.N.Y. May 19, 2016) (internal quotation marks and citation omitted). Because Plaintiffs' allegations are sufficient to meet that lower standard, the Court will grant Plaintiffs leave to amend to (more explicitly) bring hostile work environment claims under the NYCHRL.

## C. Plaintiffs' Retaliation Claims

The final claims at issue in Charter's Rule 12(b)(6) motion are Plaintiffs' retaliation claims. To state a claim of retaliation, a plaintiff must "give plausible support to the reduced prima facie requirements" of "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Febrianti v. Starwood Worldwide*, No. 15-CV-635 (JMF), 2016 WL 502027, at *3 (S.D.N.Y. Feb. 8, 2016) (quoting *Littlejohn*, 795 F.3d at 315, 318). "[T]he harm element of a retaliation claim is not to be analyzed in the same way as the harm from an alleged substantive act of discrimination." *Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019). "Instead the proper question for a retaliation claim is whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Id*. (internal quotation marks and alterations omitted). In addition, to state a claim, a plaintiff must allege that "retaliation was a 'but-for' cause of the employer's adverse action[s]." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (internal quotation marks omitted).

Applying these standards here, the Court concludes that only a few of Plaintiffs' claims are sufficient to state a claim, to wit: Torre's claim that her offer to host coverage for the Parade was denied and that discussions regarding her contract renewal stalled in retaliation for her filing this action in July 2019, *see* Compl. ¶¶ 350-52, 363-67; and Shaughnessy's claim that she was demoted to a lesser GA reporting role starting in January 2019 in retaliation for the complaints made in August 2018, *see id.* ¶¶ 303, 305-06.  Plaintiffs' other claims of retaliation fail for one or more of the following four reasons:

(1) Because Plaintiffs did not engage in protected activity — that is, by complaining of conduct prohibited by the relevant laws, *see id.* ¶¶ 273-88 (Ramirez); *id.* ¶¶ 295, 299, 301-02 (Shaughnessy); *id.* ¶¶ 335-38, 341, 345-46 (Farinacci);

(2) Because the alleged retaliatory conduct was gradual and started well before Plaintiffs' complaints, *see id.* ¶¶ 145-48, 287-88, 388-90 (Ramirez); *id.* ¶ 320 (Torre); *see also, e.g., Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001);

(3) Because the alleged retaliatory conduct does not constitute adverse employment action or is not plausibly linked to Charter, *see* Compl. ¶¶ 314, 376-78, 391 (Torre); and

(4) Because the alleged retaliatory conduct took place more than five months after engaging in protected activity and Plaintiffs do not allege any other evidence of a causal connection, *see id.* ¶¶ 287-93 (Ramirez); *see also, e.g., Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (noting that, in certain circumstances, "five months is not too long to find the causal relationship" (internal quotation marks omitted)); *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *15 (S.D.N.Y. Feb. 5, 2016) (Sullivan, J.) (dismissing NYCHRL retaliation claims where there was a four-month gap).

Finally, "[a]n employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010).  Plaintiffs' claims of retaliation premised on Charter's alleged failure to investigate their claims, therefore, fail as a matter of law.  *See* Compl. ¶¶ 313, 315, 317, 319, 344-46.  Accordingly, Charter's motion to dismiss Plaintiffs' retaliation claims is granted in part and denied in part.

**D. Charter's Motion to Strike**

Finally, Charter's motion to strike pursuant to Rule 12(f) can be swiftly rejected. In the absence of "scandalous" material, motions to strike solely "on the ground that the matter is impertinent and immaterial" are disfavored. *Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019) (quoting Fed. R. Civ. P. 12(f)); *cf. Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters."). More specifically, to prevail on such a motion, a defendant "must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (internal quotation marks omitted). Here, Charter could arguably satisfy the first two requirements, as the Complaint is unduly long and appears to contain at least some allegations that are based solely on hearsay or are unrelated to Plaintiffs' claims. *See* Def.'s Mem. 23-25. But Charter fails to show that permitting the allegations to stand "would result in prejudice." *Roe*, 151 F. Supp. 2d at 510.[3]

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The motion is denied as to Torre's disparate-pay claims; as to Plaintiffs' other claims of gender and age discrimination; and as to Torre's and Shaughnessy's retaliation claims

---

[3] In a related vein, Charter argues that the Complaint improperly alleges facts or events that postdate the filing of Plaintiffs' original complaint because Plaintiffs did not obtain leave to file a supplemental pleading pursuant to Rule 15(d). *See* Def.'s Mem. 25. But Defendants do not cite, and the Court is unaware of, any authority suggesting that a plaintiff is precluded from including such allegations in an amended complaint properly filed pursuant to Rule 15(a).

16

based on Charter's denial of Torre's offer to host the Parade, its delay in commencing discussions regarding Torre's contract, and Shaughnessy's demotion to a GA reporter role. By contrast, the motion is granted as to Plaintiffs' remaining claims of retaliation and Plaintiffs' hostile work environment claims, to the extent they are even pleaded, under Title VII, the ADEA, and the NYSHRL. Additionally, Charter's motion to strike is DENIED.

Plaintiffs are granted leave to file a second amended complaint explicitly alleging hostile work environment claims under the NYCHRL. Otherwise, the Court declines to grant Plaintiffs leave to amend *sua sponte*. Plaintiffs have neither sought leave to amend nor suggested that they possess any additional facts that could cure the defects in their dismissed claims. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Furthermore, Plaintiffs were on notice of Charter's arguments when they filed the Complaint in response to Charter's original motion to dismiss, and Plaintiffs were expressly warned that they would "not be given any further opportunity" to amend the Complaint. *See* ECF Nos. 19, 21, 25. In light of these circumstances, the Court will not *sua sponte* grant leave to amend Plaintiffs' dismissed claims. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*."); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (alteration and internal quotation marks omitted)).

Plaintiffs shall file any second amended complaint in accordance with the foregoing **within two weeks of the date of this Opinion and Order**. Charter shall file its answer **within four weeks of the date of this Opinion and Order**. In addition, the initial pretrial conference is reinstated and ADJOURNED to **November 12, 2020**, at **3:45 p.m.** The conference will be governed by the Court's Order of June 21, 2019, and the parties should prepare accordingly, including by submitting a joint status letter and proposed case management plan no later than the Thursday prior to that conference. *See* ECF No. 5.

The Clerk of Court is directed to terminate ECF No. 35.

SO ORDERED.

Dated: October 8, 2020
New York, New York

JESSE M. FURMAN
United States District Judge