UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ROMA TORRE, KRISTEN SHAUGHNESSY, JEANINE RAMIREZ, VIVIAN LEE and AMANDA FARINACCI, | : : : |
| Plaintiffs, | : : : No. 19-cv-05708 (JMF)(OTW) |
| - against - | : : |
| CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM, | : : : |
| Defendant. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY AFFECTED NON-PARTIES TO QUASH THE SUBPOENA *DUCES TECUM* SERVED ON NON-PARTY ADAM LEIBNER PURSUANT TO RULE 45(d)(3)(B)

---

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, NY 10022
Tel: 212.351.4500

*Attorneys for Non-Parties Pat Kiernan,*
*Annika Pergament, and Jamie Stelter*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL ARGUMENT .......................................................................................................... 6

   1.   The Leibner Subpoena largely seeks documents that would be within the possession, custody, or control of Charter, and therefore could be sought through party discovery to the extent appropriate ....................................................................................... 8

   2.   The Leibner Subpoena demands the production of irrelevant documents ........................ 10

   3.   Even if any documents responsive to the Leibner Subpoena could arguably be relevant, this would not justify the harm that production threatens to visit upon the Affected Non-Parties. ........................................................................................... 12

   4.   At a minimum, Plaintiffs should be required to exhaust party discovery and propound *particularized* requests for documents so as to protect the Affected Non-Parties' economic and privacy interests. ........................................................................ 17

CONCLUSION ................................................................................................................. 18

**Cases**

*Alcon Vision, LLC v. Allied Vision Grp., Inc.*,
No. 1:19-MC-00384-AT, 2019 WL 4242040 (S.D.N.Y. Sept. 6, 2019) ...................................8

*Allison v. Clos-ette Too, L.L.C.*,
No. 14-CV-1618-LAK-JCF, 2015 WL 136102 (S.D.N.Y. Jan. 9, 2015) ...........................6, 12

*Arista Records LLC v. Lime Grp. LLC*,
No. 2:10-CV-02074-MJP, 2011 WL 679490 (W.D. Wash. Feb. 9, 2011) .............................11

*Banner Indus. of N.E., Inc. v. Wicks*,
No. 1:11-CV-01537-NAM-RFT, 2013 WL 5722812 (N.D.N.Y. Oct. 21, 2013)...................15

*Burns v. Bank of Am.*,
No. 1:03-CV-01685-RMB-JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) .......................8

*In re Candor Diamond Corp.*,
26 B.R. 847 (Bankr. S.D.N.Y. 1983) ....................................................................................12

*Croom v. W. Connecticut State Univ.*,
No. CIV. 3:00-CV-1805 (PCD), 2002 WL 32503667
(D. Conn. Mar. 20, 2002).........................................................................................................16

*Discover Financial Servs. v. Visa U.S.A., Inc.*,
No. 04-CV-08967-BSJ, 2006 WL 8460949 (S.D.N.Y. Aug. 3, 2006) ...................................17

*Fort James Corp. v. Sweetheart Cup Co. Inc.*,
No. 1:97-CV-01221, 1998 WL 709813 (S.D.N.Y. Oct. 8, 1998)......................................12, 14

*Haber v. ASN 50th St., LLC*,
272 F.R.D. 377 (S.D.N.Y. 2011) ..............................................................................................8

*Henry v. Morgan's Hotel Grp., Inc.*,
No. 15-CV-1789 (ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) .........................5, 7

*Hughes v. Twenty-First Century Fox, Inc.*,
327 F.R.D. 55 (S.D.N.Y. 2018) .............................................................................................6, 7

*In re iPhone/iPad Application Consumer Privacy Litig.*,
No. 11-MD-2250-LHK-PSG, 2012 WL 5897351 (N.D. Cal. Nov. 21, 2012) .................11, 12

*Johnson v. J. Walter Thompson USA LLC*,
No. 16-CV-1805-JPO-JCF, 2017 WL 3055098 (S.D.N.Y. Jul. 18, 2017) ...............................6

*Koch v. Greenberg*,
No. 07 Civ. 9600(BSJ)(DF), 2009 WL 2143634 (S.D.N.Y. July 14, 2009) ............................6

*Lemoine v. Mossberg Corp.*,
No. 18-CV-01270-KAD, 2020 WL 3316119 (D. Conn. June 18, 2020).................................9

*Litton Industries, Inc. v. Chesapeake & Ohio Ry. Co.*,
129 F.R.D. 528 (E.D. Wis.1990) .........................................................................................12

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
294 F.R.D. 87 (S.D. Ohio 2013) ...........................................................................................9

*Palmer v. New York State Office of Court Admin.*,
No. 500-CV-0110-FJS-GHL, 2009 WL 1118271 (N.D.N.Y. Apr. 27, 2009).........................16

*Schaaf v. SmithKline Beecham Corp.*,
233 F.R.D. 451 (E.D.N.C. 2005) ...........................................................................................9

*Solow v. Conseco, Inc.*,
No. 1:06-CV-05988-BSJ-THK, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008).........................16

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
206 F.R.D. 367 (S.D.N.Y. 2002) ...........................................................................................18

*United States v. R. Enterprises, Inc.*,
498 U.S. 292 (1991).............................................................................................................12

**Rules and Statutes**

Fed. R. Civ. P. 45.............................................................................................................5, 6, 18

N.Y. Lab. Law § 194-a ...........................................................................................................14

**Other Authorities**

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2204 (3d ed.)........................................................8

Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) ....................................................15

## PRELIMINARY STATEMENT

Plaintiffs' counsel have served, or promised to serve, approximately 50 subpoenas directed largely to non-party employees of Defendant Charter Communications, Inc. ("Charter"), in their individual capacities.[1] This flood of subpoenas targets, among others, the most visible on-air talent within Charter's New York One news channel ("NY1"). Now, Plaintiffs' counsel have gone a step further, targeting certain of these employees—including NY1 anchors Pat Kiernan, Annika Pergament, and Jamie Stelter (collectively, the "Affected Non-Parties")—*indirectly* by taking aim in the instant subpoena at the confidential files of their talent agent, Adam Leibner (the "Leibner Subpoena").[2]

Each of these subpoenas, including the Leibner Subpoena, overlap almost entirely with Plaintiffs' document demands of Charter. And all were propounded before Plaintiffs are in any position to know (a) whether what can be obtained from Charter itself is materially lacking, or (b) whether there is good reason to expect that any one of the subpoena respondents, as individuals, might truly be in a position to fill in any ostensible gap in Charter's production of documents. There is, in short, no *good* reason for this flurry of subpoenas, including (and perhaps, especially) the Leibner Subpoena.

Plaintiffs' counsel are using this legal proceeding, and the privileges it affords, as a tool to exert extra-judicial pressure on Charter—from within and without. Their invasive, duplicative and (at best) premature subpoenas directed to scores of employees—and now, those who represent them—are designed to apply pressure on Charter by invading upon confidential

---

[1] *See, e.g.*, Dkt. 59 at Ex. A (letter from Plaintiffs' counsel to Charter's counsel, dated Oct. 22, 2020, listing 49 "individuals employed or previously employed by Charter" on whom Plaintiffs' counsel intended to serve subpoenas).

[2] *See* Declaration of Pat Kiernan, dated Dec. 11, 2020 ("Kiernan Decl."), at ¶¶ 1-2; Declaration of Annika Pergament, dated Dec. 11, 2020 ("Pergament Decl."), at ¶¶ 1-2; Declaration of Jamie Stelter, dated Dec. 11, 2020 ("Stelter Decl."), at ¶¶ 1-2. Mr. Leibner is a Partner in Bienstock, A United Talent Agency Company ("UTA"). *See id.*

commercial and financial information of its employees. Their decision to unleash a torrent of subpoenas at this moment—many originally returnable the day after Thanksgiving—was not animated by a *bona fide* need for the personally-held documents of multitudes of Charter employees and their agents, like Mr. Leibner. The subpoenas are instead a cudgel being used to upset and harass Charter's employees, with the purpose of driving them to urge Charter to resolve the underlying case irrespective of merit, so they can get back to their work and lives.

The Leibner Subpoena, in particular, is designed for maximum impact. Among other things, the Leibner Subpoena seeks with respect to all of the Affected Non-Parties:

> ***All documents and communications related to [each of the Affected Non-Parties'] contract with Charter***, including but not limited to contracts, including but not limited to contracts, communications and/or negotiations with Charter and/or Charter's representatives.[3]

Those broad requests promise to place the Affected Non-Parties' private communications with their agent concerning their personal financial information, employment information, contract negotiating strategy, and other protectable commercial data into the stream of discovery to be shared with the *counterparty* to their contract negotiations (Charter), with other employees (the Plaintiffs), and to potentially be placed into the public domain in court proceedings.

Plaintiffs' counsel also are exploiting media coverage to cause these key non-party employees anxiety, to distract them personally and professionally, and to apply direct and indirect pressure on Charter. The latest example concerns the recent communication sent by Plaintiffs' counsel to the Court[4] (which was otherwise a mundane discovery-status letter) making its way into a tantalizing article in the New York Post about the "aggrieved" Plaintiffs desire to

---

[3] *See* Declaration of Ronald M. Green, dated Dec. 11, 2020 ("Green Decl."), Ex. 1 (Leibner Subpeona) at Document Request Nos. 1-3 (emphasis added).

[4] *See* Dkt. 73.

explore Mr. Kiernan's employment contract—complete with quotations from Plaintiffs' counsel.[5]

Extra-judicial objectives aside, these subpoenas, including the Leibner Subpoena, are unnecessary and unjustifiable. Plaintiffs can seek, and indeed are seeking, *from Charter* the vast majority of what they seek here—to the extent that any such requests are proper to begin with. And whatever documents and communications could be obtained from Mr. Leibner but *not* also from Charter would be irrelevant, because they could not have informed Charter's personnel decisions at issue in this litigation. Even if, however, Mr. Leibner might in theory possess unique, tangentially relevant documents, that possibility would not justify what Plaintiffs are asking for—*i.e.*, an indiscriminate incursion into the Affected Non-Parties' private and commercially-sensitive communications with their agent. That incursion threatens the Affected Non-Parties with manifold, irreparable economic and career injury. For these reasons, the Leibner Subpoena should be quashed.

## BACKGROUND

Plaintiffs, who appear on Charter's NY1 news channel, allege that Charter—and, particularly, certain Charter executives specified in their pleading—discriminates against them on the basis of their age and/or gender in the following ways: "their on-air time has been dramatically reduced, anchoring opportunities have disappeared, prime reporting roles have been taken away and promotional efforts have vanished."[6] Plaintiffs generally claim that various desirable assignments, of which they were deserving, have instead been given to males and/or

---

[5] *See* Green Decl., Ex. 2. This is by no means the sole manifestation of Plaintiffs' counsel's external pressure strategy. That strategy is evident from their Complaint itself, which contains circular references to commentary by persons who were, *after* this action was filed, *solicited* to scold Charter publicly, and cites the views of "Twitter member[s]" as ostensible evidence of the merits of their claims. (*See* Second Amended Complaint, Dkt. 58, at ¶¶ 202, 353-355.)

[6] Second Amended Complaint, Dkt. 58, at ¶ 4.

younger females.[7]  Plaintiff Torre also claims to be "underpaid relative to her male daily on-air counterparts."[8]

Plaintiffs allege that Mr. Kiernan and Ms. Stelter are among the "preferred group" of employees to whom Charter's executives have awarded coveted assignments, rather than giving those assignments to Plaintiffs.[9]  Plaintiffs' counsel also characterizes Mr. Kiernan—in their recent letter to the Court and concomitant New York Post interview—as the "primary male comparator for purposes of [Plaintiff Torre's] equal pay claim."[10]  As to Ms. Pergament, who, like Plaintiffs, is over 40 years old, Plaintiffs aver only that Charter featured her on one occasion in a promotional video as part of an alleged ruse "to make it appear as if [Charter] is supportive of its older women employees."[11]

Plaintiffs *do not* allege that any of the Affected Non-Parties had any decision-making authority *vis à vis* Charter's impugned personnel decisions.  Indeed, Plaintiffs do not allege that any of the Affected Non-Parties played *any* role at all in those decisions, nor do Plaintiffs allege that the Affected Non-Parties participated in any wrongdoing of any kind.

Nevertheless, on or about October 28, 2020, Plaintiffs' counsel served, on each of the Affected Non-Parties, subpoenas that effectively demand the production of every document relating in any way to the Affected Non-Parties' employment with Charter, whether shared with Charter or not.[12]  The Affected Non-Parties timely objected to those subpoenas.[13]  On or about November 13, 2020, Plaintiffs' counsel served the Leibner Subpoena—an additional avenue for

---

[7] *See, e.g.*, *id.* at ¶¶ 1, 2, and 4.

[8] *See id.* at ¶ 256.

[9] *See id.* at ¶ 238; *see also id.* at ¶¶ 173, 193-203.

[10] *See* Dkt. 73 at 2; Green Decl., Ex. 2.

[11] Second Amended Complaint, Dkt. 58, at ¶ 362.

[12] *See* Green Decl., ¶¶ 5-7.

[13] *See id.*

the harassment of the Affected Non-Parties.[14]  The Leibner Subpoena demands, explicitly, the production of all documents and communications relating to Mr. Kiernan's (Request No. 1) and Ms. Pergament's (Request No. 2) "contract[s] with Charter," without substantive limitation and through the present.[15] The Leibner Subpoena also demands all documents and communications relating to the contracts of any *other* Charter employee who is a client of Mr. Leibner (Request No. 3), which includes Ms. Stelter.[16]  Further, the Leibner Subpoena demands "all documents and communications with [Mr. Kiernan and Ms. Pergament] related to or mentioning any of the Plaintiffs" (Request Nos. 4 & 5), without substantive limitation and through the present.[17]  In addition, there is a catch-all request for all documents "regarding the allegations" in Plaintiffs' 463-paragraph Complaint (Request No. 6).[18]

The parties have agreed that both the Affected Non-Parties and Mr. Leibner shall have until December 11, 2020 to move with respect to, or otherwise respond to, the Leibner Subpoena.[19]  On December 9, 2020, Mr. Leibner's counsel served Plaintiffs' counsel with objections to the Leibner Subpoena, pursuant to Fed. R. Civ. P. 45(d)(2)(B).[20]  For the reasons stated herein, the Affected Non-Parties respectfully request that the Leibner Subpoena be quashed in its entirety.

---

[14] *See* Green Decl., Ex. 1 (Leibner Subpoena).  As noted, Plaintiffs' counsel demanded that documents be produced in response to the Leibner Subpoena by November 27, 2020—the day after Thanksgiving.  *See id.*; *see also Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *1 (S.D.N.Y. Jan. 25, 2016) ("The subpoenas were served on Christmas Eve (an arguably sharp tactic to begin with)").

[15] Green Decl., Ex. 1 at Document Req. Nos. 1 and 2.

[16] *Id*. at Document Req. No. 3.

[17] *Id*. at Document Req. Nos. 4 and 5.

[18] *Id*. at Document Req. No. 6.

[19] *See* Green Decl., ¶ 2.

[20] *See* Green Decl., Ex. 3.

## LEGAL ARGUMENT

Rule 45(d)(3)(B) of the Federal Rules of Civil Procedure authorizes this Court to quash a subpoena "[t]o protect a person subject to *or affected by* a subpoena[.]" Fed. R. Civ. P. 45(d)(3)(B) (emphasis added).

Persons who are not subject to a subpoena, but who would nevertheless be affected by disclosures made in response thereto, have standing to request that the Court quash a subpoena that implicates "a trade secret or other confidential research, development, or commercial information," (*id.*), or a "privacy interest" in maintaining the confidentiality of the records sought—including employment records. *See Johnson v. J. Walter Thompson USA LLC*, No. 16-CV-1805-JPO-JCF, 2017 WL 3055098, at *6 (S.D.N.Y. Jul. 18, 2017) ("An employee has a privacy interest in her employment records sufficient to give her standing to object to a subpoena for those records served on a non-party employer.") (collecting cases); *Allison v. Clos-ette Too, L.L.C.*, No. 14-CV-1618-LAK-JCF, 2015 WL 136102, at *7 (S.D.N.Y. Jan. 9, 2015) ("courts have repeatedly found that an individual possesses a privacy interest with respect to information contained in her employment records and therefore has standing to challenge subpoenas seeking such records"); *Koch v. Greenberg*, No. 07 Civ. 9600(BSJ)(DF), 2009 WL 2143634, *3 n.1 (S.D.N.Y. July 14, 2009) ("[I]ndividuals have a constitutionally protected privacy interest in their personal records, which may provide a basis for standing to challenge subpoenas served on non-party institutions.").

Further, "[a]ny subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citations omitted). In that regard, even a request for ostensibly relevant documents should be permitted only if, and to the extent that, it is "proportional" in the context of the case—a limitation intended to "encourage judges to be more

aggressive in identifying and discouraging discovery overuse[.]" *Henry*, 2016 WL 303114, at *3 (quashing subpoena for employment records that called for "[a]ll documents and communications . . . referring or related to [plaintiff]" and collecting cases that reject such requests for "any and all documents") (citations omitted).

The Affected Non-Parties have standing to bring this motion because the Leibner Subpoena threatens an egregious intrusion into their private financial information, employment records, and commercially-sensitive communications with their agent that, if disclosed, will visit substantial economic and career injury on them. The harm to the Affected Non-Parties that would be engendered by enforcement of the Leibner Subpoena far outweighs Plaintiffs' purported need for it. Indeed, any documents and communications possessed by Mr. Leibner that, at least in theory, could *conceivably* be material to this case—*i.e.*, documents and communications exchanged with Charter—may be sought from Charter itself. And those internal communications between an agent and his clients that did *not* make their way to Charter *could not bear on Charter's employment decisions*. Plaintiffs will not be prejudiced by the quashing of the Leibner Subpoena.

On the other hand, such an invasive disclosure of these non-parties' personal financial and employment information, and confidential bargaining positions with respect to their contracts, promises to irreparably harm them. Among other injuries outlined below, placing such information into the stream of discovery would inform Charter, the counterparty to their negotiations, of their confidential negotiating positions, including what they demanded versus what they would take. Doing so also would inure to the competitive advantage of the Plaintiffs, and concomitant competitive disadvantage of the Affected Non-Parties, all of whom engage in contract negotiations with Charter.

In view of the substantial personal, professional, and financial consequences that enforcement of the Leibner Subpeona could have on Affected Non-Parties, there can be no doubt that each of them have a privacy interest at stake sufficient to confer standing to challenge that subpoena. Plaintiffs, who chose to name Mr. Kiernan and Ms. Pergament in the first two document demands of the Leibner Subpoena, and crafted the third to include Ms. Stelter, cannot be heard to argue otherwise.

1. **The Leibner Subpoena largely seeks documents that would be within the possession, custody, or control of Charter, and therefore could be sought through party discovery to the extent appropriate.**

It is well-settled that a subpoena is unnecessary, and should be quashed, if the documents sought from a *non-party* can be obtained through *party* discovery. *See*, *e.g*., Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2204 (3d ed.) ("Ordinarily, it is thought preferable that documents should be sought from a party using Rule 34 rather than from a nonparty."). "[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Burns v. Bank of Am.*, No. 1:03-CV-01685-RMB-JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (granting motion to quash subpoena to non-party employee of defendant where that subpoena sought "precisely the same documents as demanded in [the] First Request for the Production of Documents [directed to defendant]."); *see also Alcon Vision, LLC v. Allied Vision Grp., Inc*., No. 1:19-MC-00384-AT, 2019 WL 4242040, at *2 (S.D.N.Y. Sept. 6, 2019) (granting motion to quash subpoena to third-party where the plaintiff had "ample opportunity to obtain the information by discovery in the action.") (internal citations omitted); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) ("[T]he Sellers Subpoena is quashed for the additional reason that it is duplicative of Haber's document requests [upon

defendants]").[21]   Courts in this Circuit have, therefore, "consistently granted motions to quash where the subpoenaed documents were requested from or could have been requested from the party-opponent during the normal course of discovery." *Lemoine v. Mossberg Corp.*, No. 18-CV-01270-KAD, 2020 WL 3316119, at *1 (D. Conn. June 18, 2020).

The Leibner Subpoena, like Plaintiffs' counsel's other subpoenas, circumvents party discovery to target key Charter employees (either directly or through their agents), personally. To whatever extent they may be entitled to such documents at all, Plaintiffs could seek *from Charter* appropriately discoverable information related to the Affected Non-Parties' employment with Charter.   Indeed, Plaintiffs have explicitly done so.   Plaintiffs' document demands propounded on Charter seek the following:

> 20. All documents related to the terms and conditions of Pat Kiernan . . . Jamie Stelter, [and] Annika Pergament['s] . . . employment, including but not limited to employment contracts, offer letters and agreements.

> 21. All documents related to the review and/or evaluation of Mr. Kiernan, . . . Ms. Stelter, [and] Ms. Pergament['s] . . . work, performance and/or employment . . . .

> 22. All documents maintained regarding Mr. Kiernan, . . . Ms. Stelter, [and] Ms. Pergament['s] . . . employment . . . .

> 23. All documents containing or reflecting praise or criticism regarding Mr. Kiernan, . . . Ms. Stelter, [and] Ms. Pergament . . . and/or their work, performance and/or employment. [22]

---

[21]*See also Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 98–99 (S.D. Ohio 2013) (denying plaintiff's request for non-party discovery to probe contract negotiations between non-party and defendant, observing that "Plaintiff can inquire of Defendants, and not of non-party Anthem" as to the particulars of the negotiations at issue); *Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 455–56 (E.D.N.C. 2005) (quashing subpoena directed to defendant's employee for overbreadth and because "plaintiff should seek relevant, responsive [employer] documents from [plaintiff's employer] via the [party] discovery process . . . and *not* by issuing third-party subpoenas for [employer] documents to [employer's] employees") (emphasis in original).

[22] *See* Green Decl., ¶ 8.

Plaintiffs have further demanded in party discovery that Charter produce all communications—without any substantive limitation and through the present—exchanged between any of the Affected Non-Parties on one hand, and various Charter executives impugned in Plaintiffs' Complaint on the other hand.[23]  Plaintiffs also have demanded that Charter produce all documents relating to personnel decisions made by Charter allegedly relating to the Affected Non-Parties (among many other employees).[24]

Setting aside, for a moment, the merits of Plaintiffs' demands to see the Affected Non-Parties' contracts, the bottom line is that Plaintiffs could seek those contracts—and communications related thereto—*through party discovery from Charter.*  Plaintiffs do not require the Leibner Subpoena to do so.

## 2. The Leibner Subpoena demands the production of irrelevant documents.

As an initial matter, Plaintiffs do not require access to Affected Non-Parties' operative *contracts* to begin with—let alone communications relating to them, or drafts of them.  Plaintiffs' core claim is that they are deserving of assignments that instead went to their colleagues.  They certainly do not need to peer at their colleagues' contracts in order to put forward that claim. With respect to Plaintiff Torre's gender-based pay equity claim, *even if* Mr. Kiernan, as alleged, were a valid comparator—a question that need not be resolved here—disclosure of his contract would be entirely unnecessary in order to demonstrate his income.  And as for Ms. Pergament and Ms. Stelter, they are, as females, not even alleged comparators; there is not even a *colorable* reason why Plaintiffs should be made aware of *any* term of their agreements with Charter.

In any event, as outlined above, *even if* the contracts themselves were relevant, they would be in Charter's possession, and thus an inappropriate basis for non-party discovery.

---

[23] *See id.*

[24] *See id.*

Further, any *additional* documents that Plaintiffs could theoretically obtain via the Leibner Subpoena—*i.e.*, documents that could not be obtained from Charter as well—would be irrelevant.

As noted, Plaintiffs do not allege that the Affected Non-Parties had any authority *vis à vis* the staffing and other decisions by which Plaintiffs have allegedly been aggrieved. Plaintiffs also do not allege that the Affected Non-Parties played any role whatsoever in those decisions, or otherwise did anything wrong. Rather, Plaintiffs allege, exclusively, that they were aggrieved by decisions *made by Charter executives*.

Therefore, documents in Mr. Leibner's possession relating to any of the Affected Non-Parties, or to any of the Plaintiffs, that were *not sent to or from Charter*, and therefore *were not considered by Charter* in connection with the company's impugned decisions, are not pertinent. Whatever any of the Affected Non-Parties may have communicated *privately* to Mr. Leibner regarding their beliefs as to the opportunities they deserve, or what opportunities other employees do or do not deserve, or any other thoughts they may have had regarding NY1, simply has no bearing on Plaintiffs' claims that *Charter executives* have based their personnel and other decisions on improper factors. *Cf. Arista Records LLC v. Lime Grp. LLC*, No. 2:10-CV-02074-MJP, 2011 WL 679490, at *2-3 (W.D. Wash. Feb. 9, 2011) (denying defendant's motion to compel subpoena directed to non-party Amazon, insofar as Amazon's communications with plaintiff could be obtained from plaintiff, and "Amazon's internal communications are not relevant"); *In re iPhone/iPad Application Consumer Privacy Litig*., No. 11-MD-2250-LHK-PSG, 2012 WL 5897351, at *6–7 (N.D. Cal. Nov. 21, 2012) (denying plaintiffs' discovery as to internal communications among Apple's executives regarding privacy on the grounds that plaintiffs' claims "involve Apple's representations to consumers, [and] its failure to comply with

those representations," and, therefore, the company's internal communications were "beyond the scope of [plaintiffs'] claims").

3. **Even if any documents responsive to the Leibner Subpoena could arguably be relevant, this would not justify the harm that production threatens to visit upon the Affected Non-Parties.**

Even if Plaintiffs' counsel could conceive of a theory as to the potential relevance of documents and communications in Mr. Leibner's possession, Plaintiffs could not show, as required, that such documents would be "sufficiently relevant and necessary to [their] case to outweigh the harm disclosure would cause[.]" *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 306 n.4 (1991) (Stevens, J., concurring) (quoting *Litton Industries, Inc. v. Chesapeake & Ohio Ry. Co.,* 129 F.R.D. 528, 530 (E.D. Wis.1990)); *see also Allison*, 2015 WL 136102, at *8 ("The burden of demonstrating relevance is on the party seeking discovery."); *Fort James Corp. v. Sweetheart Cup Co. Inc.*, No. 1:97-CV-01221, 1998 WL 709813, at *2 (S.D.N.Y. Oct. 8, 1998) (observing that, "[w]hen a subpoena to a non-party seeks confidential commercial information . . . Fed. R. Civ. P. 45(c)(3)(B) places the burden on the demanding party to show a substantial need for the information that cannot otherwise be met without undue hardship," and finding that plaintiff had not met that burden); *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (Bankr. S.D.N.Y. 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment . . . or disclosure of confidential information.").

As noted, the subpoena demands, *inter alia*, the production of all documents relating in any way to the Affected Non-Parties' contracts with Charter, without substantive limitation. This sweeping demand would capture any documents and communications reflecting the Affected Non-Parties' private and confidential strategies for negotiation of employment contracts with

Charter.[25]  This would include, for example, the Affected Non-Parties' highly-confidential internal analyses regarding potential monetary demands or offers—their "ask" versus what they would take with respect to a particular contractual provision—as well as their deliberations about how best to leverage their talent, accomplishments and credentials to advance their careers.[26]

Therefore, the commercial / economic injury that the Leibner Subpoena would inflict on the Affected Non-Parties is manifold.

*First*, the Affected Non-Parties must negotiate new contracts with Charter periodically.[27] If the Leibner Subpoena is enforced, in these future negotiations, their contractual counterparty—Charter—will have access to their internal strategizing around negotiation of their respective employment contracts.  To say that this threatens to damage the Affected Non-Parties' prospects of negotiating favorable contracts with Charter going forward would be an understatement.  Merely by being a party to this litigation, Charter would be exposed through the stream of discovery to information showing whether the Affected Non-Parties would be inclined to accede to compensation lower than their demands.[28]  Even beyond the prospect of depriving the Affected Non-Parties' of leverage in negotiating their *compensation* terms, Charter would—again, merely by being a party in the stream of discovery—gain insight as to other concessions that might be extracted from the Affected Non-Parties.[29]  The disclosure of the Affected Non-Parties contracts—let alone their privately-held negotiating strategy in relation to Charter—also

---

[25] *See* Kiernan Decl. at ¶ 4; Pergament Decl. at ¶¶ 4-5; Stelter Decl. at ¶ 4.

[26] *See* Kiernan Decl. at ¶¶ 4-10; Pergament Decl. at ¶¶ 5-9; Stelter Decl. at ¶¶ 4-5.

[27] *See* Kiernan Decl. at ¶ 4; Pergament Decl. at ¶ 6; Stelter Decl. at ¶ 5.

[28] *See* Kiernan Decl. at ¶¶ 5-6; Pergament Decl. at ¶¶ 5-6; Stelter Decl. at ¶¶ 4-5.

[29] *See* Kiernan Decl. at ¶¶ 5-6; Pergament Decl. at ¶¶ 5-6; Stelter Decl. at ¶¶ 4-5.

would damage the Affected Non-Parties in the context of potential contract negotiations with other entities regarding media, public, or performance opportunities.[30]

*Second*, the Affected Non-Parties are, as media personalities, brands and businesses unto themselves. There are a finite number of available opportunities in their industry and in their workplace, for which they effectively compete with their colleagues and others.[31] As with any competitor, total insight into the Affected Non-Parties' thinking and planning as to their proprietary strategies for competitive positioning would inure to Plaintiffs' competitive advantage, and their disadvantage. The Affected Non-Parties communicate with Mr. Leibner regarding their goals at NY1, regarding endeavors that they wish to pursue, and about benefits to which they believe they are entitled.[32] Undoubtedly, Plaintiffs would like to know what their colleagues / competitors are thinking in this regard, and what deal terms they have managed to negotiate, and tried to negotiate, with Charter over the years. These insights would enable Plaintiffs (and others) to "outmaneuver" the Affected Non-Parties in competition for assignments, and in contract negotiations.[33] There is no justification for providing Plaintiffs with such a competitive windfall, and for concomitantly kneecapping the Affected Non-Parties' competitive positions.[34]

---

[30] *See* Kiernan Decl. at ¶¶ 7-8; Pergament Decl. at ¶ 8. Indeed, in New York State, it is unlawful for prospective employers even to *ask* about prior compensation. *See* N.Y. Lab. Law § 194-a. If Plaintiffs have their way, the Affected Non-Parties compensation would be a matter of public record.

[31] *See* Kiernan Decl. at ¶¶ 9-10; Pergament Decl. at ¶ 7-9.

[32] *See* Kiernan Decl. at ¶¶ 9-10; Pergament Decl. at ¶ 9.

[33] *See id.*

[34] It simply cannot be that, upon an allegation of unfair treatment by management, an employee may help himself or herself to plenary, individual discovery from any employee perceived as competitor in the workplace, which is what Plaintiffs' counsel are attempting to do here with their wave of subpoenas. *Cf. Fort James Corp.*, 1998 WL 709813, at *2 (quashing third party subpoenas served on competitors in patent infringement suit, and observing: "It is clear that intoning that discovery of the type sought is relevant to a patentee's damage theory (or theories) is insufficient. . . . Indeed, a holding to the contrary is fraught with the potential for abuse enabling a patentee in virtually every infringement suit, [to] immediately obtain discovery from all possible competitors by merely filing a complaint asking for damages against one.") (internal citations and quotations omitted).

"Courts within this Circuit have been keenly sensitive to the burden imposed upon a non-party witness who may be subject to irreparable harm and prejudice for exposing its proprietary information." *Banner Indus. of N.E., Inc. v. Wicks*, No. 1:11-CV-01537-NAM-RFT, 2013 WL 5722812, at *8 (N.D.N.Y. Oct. 21, 2013); *see also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.) (observing that the authority to quash a subpoena pursuant to Rule 45(d)(3)(B) is "particularly useful when the subpoena is being used to secure some type of a competitive advantage."). Indeed, "where a subpoena may have little or no relevance to the claims and defenses in a particular action, while having the potential of disclosing confidential or proprietary information that could create a contemporary and possibly an uncompromising competitive business edge over others, a court should consider quashing the subpoena." *Banner Indus. of N.E., Inc.*, 2013 WL 5722812 at *8. That is *particularly* true where, as here, the exposure of a non-party's negotiation thought processes and strategies threatens to compromise his or her ability to negotiate future contracts. *Id.* at *9 (quashing subpoena, reasoning: "Allowing a client, now turned litigant, to inquire into the ultimate decision that prevented them from being a distributor in New York, even under attorneys' eyes only, is fraught with grave and deleterious peril. Revealing the foundation of a decision that has an integral bearing on two competitors who were vying for the same distributorship, even, and especially, to their respective litigating attorneys, can only be a ruinous course for [the third party] who wishes to maintain those business relationships."). And it is also true where, as here, a subpoena threatens disclosure of a non-party's private and commercially vital information to competitors.

Hence, in *Solow v. Conseco, Inc*., this Court quashed a subpoena served by a plaintiff on its competitor in the New York real estate market, which owned or was pursuing properties that the plaintiff was also pursuing, because the subpoena would have required divulgence of

documents of "little or no relevance" to the plaintiff's claims, but of "potential value to [the plaintiff] in his contemporary competitive relationship with . . . a non-party to this litigation." No. 1:06-CV-05988-BSJ-THK, 2008 WL 190340, at *5 (S.D.N.Y. Jan. 18, 2008). The New York media environment in which the Affected Non-Parties and the Plaintiffs operate is *at least* as competitive as the city's real estate market, and the effects of disclosure in this context would be at least as deleterious.[35]

Moreover, courts in this Circuit are understandably protective of the kind of confidential, employment related information sought by the Leibner Subpeona. Even in the context of *party* discovery, where employment discrimination plaintiffs seek records relating to their non-party colleagues, courts regularly consider the threatened harm to those non-parties to outweigh the purported relevance of their employment records. *See*, *e.g.*, *Palmer v. New York State Office of Court Admin.*, No. 500-CV-0110-FJS-GHL, 2009 WL 1118271, at *1 (N.D.N.Y. Apr. 27, 2009) ("Employment discrimination plaintiffs often seek personnel records of employees not directly involved in the suit in order to develop information needed to make a comparison between the employment situations of those employees and those of the plaintiff. However, the required production . . . of personnel records of non-party employees . . . is not generally favored"); *Croom v. W. Connecticut State Univ.*, No. CIV. 3:00-CV-1805 (PCD), 2002 WL 32503667, at *2 (D. Conn. Mar. 20, 2002) (in employment discrimination case, denying plaintiff's motion to compel production of non-parties' personnel files, noting that allowing such discovery would be "imprudent," and observing that "the request . . . appears to be little more than a fishing expedition."). The sensitive employment information at stake here deserves the same protection.

---

[35] *See* Kiernan Decl. at ¶ 10; Pergament Decl. at ¶ 9; Stelter Decl. at ¶ 5.

In sum, disclosure of documents reflecting the Affected Non-Parties' private and commercially-sensitive deliberations with their agent, Mr. Leibner, would disadvantage the Affected Non-Parties both as to the Plaintiffs, and as to their contractual counter-party, Charter. Particularly as non-parties, movants should be spared the prospect of substantial harm threatened by the requested intrusion into highly-confidential and sensitive information—information that did not bear on Charter's impugned employment decisions insofar as it was not communicated to Charter. *See Discover Financial Servs. v. Visa U.S.A., Inc.*, No. 04-CV-08967-BSJ, 2006 WL 8460949, at *2 (S.D.N.Y. Aug. 3, 2006) (quashing subpoena where "many of the documents sought by Visa [were] of a confidential nature and concern sensitive future business plans" and observing that Visa's failure to meet its burden to show a substantial need for such documents was "more glaring in light of Citi's non-party status in this litigation.").

4. **At a minimum, Plaintiffs should be required to exhaust party discovery and propound *particularized* requests for documents so as to protect the Affected Non-Parties' economic and privacy interests.**

Finally, even if the Court is disinclined to quash the Leibner Subpoena with prejudice, at a minimum, the Affected Non-Parties respectfully submit that the subpoena should be quashed without prejudice to Plaintiffs' ability to amend and narrowly-tailor those subpoenas, if they are necessary at all, *after* the completion of party discovery (including the resolution of any disputes regarding the adequacy of any production). If, after reviewing Charter's full production, Plaintiffs have good reason to believe that Mr. Leibner is in possession of *particular* relevant documents—the *production of which would not be injurious to the Affected Non-Parties as*

*outlined above, and subject to an appropriate protective order consistent with the concerns raised herein*—Plaintiffs can make their case as to such specified documents.[36]

## CONCLUSION

In executing on their promised coordinated service of approximately 50 subpoenas on employees of Charter—particularly on some of NY1's highest-profile on-air personalities, and their agent—Plaintiffs' counsel undoubtedly is attempting to make waves, both publicly and within Charter. Their attempt, however, to make life difficult for Mr. Kiernan, Ms. Pergament, Ms. Stelter (and scores of their colleagues), and to coerce Charter by placing its key employees under a distracting cloud of personal and economic peril cannot be justified. Any remote possibility that the Leibner Subpoena might reach unique, relevant documents that Plaintiffs *cannot* also seek from Charter is overshadowed by the substantial harm that the subpoena threatens to visit upon the Affected Non-Parties.

Accordingly, the Affected Non-Parties respectfully request that the Court quash the Leibner Subpoena pursuant to Rule 45(d)(3)(B).

Dated: New York, New York
December 11, 2020

EPSTEIN BECKER & GREEN, P.C.

By:  */s/ Ronald M. Green*
Ronald M. Green
Eric W. Moran
Edward M. Yennock
875 Third Avenue
New York, NY 10022
Tel: 212.351.4500

*Attorneys for Non-Parties Pat Kiernan, Annika Pergament, and Jamie Stelter*

---

[36] Alternatively, for the reasons stated herein, there exists "good cause" to stay enforcement of the Leibner Subpoena pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. *See, e.g.*, *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).